**VETERANS OF FOREIGN WARS et, Plaintiffs, v. SWEENEY, Sheriff et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 626355. Decided January 10, 1952.

278

Phillip Bartell, Cleveland, for plaintiffs.

Joseph Sweeney, Sheriff, Frank T. Cullitan, County Pros. Atty., Cleveland, for defendant.

Roland A. Baskin, Cleveland, for defendant James Topping, Mayor and George Dickman, Chief of Police.

## OPINION

By BLYTHIN, J:

This is an action brought by Brookpark Post No. 3345, Veterans of Foreign Wars, and two individuals personally and as officers of said Post against the Sheriff of Cuyahoga County and the Mayor and Chief of Police of the Village of Brook Park. The headquarters of said Post is within said County and Village.

Plaintiffs allege that said Post, by resolution of its membership, has authorized the initiation of this action, such membership being composed of veterans of foreign wars organized to promote the general welfare of the membership, their families and members of the armed forces, past and present; to promote love of country and to assist certain worthy per-

sons; to aid families in unfortunate circumstances and, generally, to be a force and center for public philanthropy.

· It is further alleged that for the carrying out of the purposes stated the plaintiffs have occupied a headquarters and meeting place at 13315 Brookpark Road within said Village since 1949 and that they have there conducted and promoted an activity known as "Bingo." The game and its operation are then described in careful detail and with sufficient clarity and frankness to leave one without the slightest ground to believe the game to be anything other than a game of chance and a lottery. It is asserted that "the element of chance is made subordinate to the objective of bringing the participants into a collective whole for social purposes."

It is further alleged that said "Bingo" operation is conducted for the purpose of raising funds to carry out the purposes already recited, and that all the income derived from the operation, after deduction for gifts to contributors, after payment for labor, rent, supplies and similar expenses, had been and would be turned over to an individual acting as Post Treasurer for charitable purposes and that no net proceeds so realized are used for payment to any individual person for his own benefit or profit and that all such net proceeds are retained by said Post and used for eleemosynary purposes of the nature already mentioned and for aid to convalescing soldiers, scholarships and general philanthropy.

It is still further alleged that as a result of said operations many members of the Post and their families have been given employment; economic distress to such persons has been averted and that to date there has (from proceeds) been created a building fund of approximately $24,500.00 for the purpose of building a permanent home for the Post, particularly for recreational purposes, and eventually for establishing within the home a place for refreshment, recreation and rest for the members of the armed forces—generally known as a "Canteen." It is asserted that many deserving persons have been aided by Post donations and that the Post is ever alert to aid unfortunate persons, such as inmates of the Crile Veterans' Hospital, and that other public-spirited activities and purposes have benefitted by the conduct of said Bingo. Having so described their bingo activities and laudable pur-·poses, plaintiffs say that a court ruling within the county to the effect that the city of Cleveland was and is without authority to license Bingo games has led the defendants, Sheriff of the County and Mayor and Chief of Police of the Village, to harass plaintiffs in their efforts to conduct their bingo games and led them to threaten to arrest plaintiffs if they

continue said games and that defendants have declared their intentions to make such arrests if such games are continued, and without regard to the disposition or use of the proceeds thereof for charitable or eleemosynary purposes and without respect to the provisions of §13064 GC. It is then claimed that there exists a justiciable controversy between the parties and that plaintiffs are uncertain as to their rights and that they are without an adequate remedy at law unless their rights can be stated and determined by a declaratory judgment and by an order at the hands of this court restraining defendants from interfering with them in the conduct of their bingo operations for the specific purposes set forth.

Plaintiffs seek to have the Court declare:

1. That the promotion of bingo as described in the Amended Petition, not for the profit of plaintiffs, is not a penal offense under §13064 GC.

2. That the purposes mentioned in the Amended Petition are not for the promoters' own profit, nor for the profit of the plaintiffs.

3. That no criminal offense results from promotion by plaintiffs of the activities described in the Amended Petition.

4. That the equipment used in the described activities, when such use is in connection with said described activities of plaintiffs, is not gaming device use, as described in §13066 GC, nor included within the penal provisions thereof.

5. That when such promoters are engaged as described, they are entitled to be free from harassment and interference by Sheriff or other administrative or ministerial officers under the provisions of §13064 GC, unless such activities are for the persons' or plaintiffs' or promoters' or participants' own profit.

6. That when engaged as in numbers 1 to 5 inclusive, immediately preceding, to-wit: Promoting or participating in Bingo not for profit of such promoters, plaintiffs or participants, under §13064 GC, none of such parties are "wagering" as defined in §13059 GC.

Plaintiffs then seek to have the Court issue, on the basis of such declarations, a restraining order enjoining the defendants from interfering with them in their operations, so described, provided such operations are not for the profit of the plaintiffs.

To this Amended Petition the defendants demur on the general ground that it does not allege facts which entitle the plaintiffs to either of the reliefs prayed for.

### ARE PLAINTIFFS ENTITLED TO A DECLARATORY JUDGMENT?

Declaratory judgments are authorized in Ohio under the

provisions of §12102 et seq., GC. Our Supreme Court has furnished in clear terms the conditions into which a controversy must fit to justify a declaratory judgment.

**Radaszewski v. Keating, 141 Oh St, 489.** They are in subtance:

(1) It must be within the terms of the Declaratory Judgment Act.

(2) It must disclose a real controversy presently existing between the parties.

(3) It must appear to be necessary to afford speedy relief to protect some rights.

(4) The judgment, when rendered, must terminate the controversy.

See also **American Life and Accident Ins. Co. v. Jones, Admr., 152 Oh St, 287.**

The statutory provisions do not specifically confine the right to a declaratory judgment to civil cases. Some text writers seem far more anxious than courts to have such provisions extended or construed to include criminal cases and in their enthusiasm must be said to claim more for some of those cases than the courts actually pronounced. Most of the cases cited are those which cannot possibly be said to be simply criminal cases. They are chiefly cases of claimed violation of some rules, regulations or statutory provisions encountered in the conduct of a perfectly legitimate business and which leave a citizen in doubt, as between himself and some agency of his government, as to what he may or may not legally do in the conduct of his business. As soon as the controversy between the businessman and the regulating or law-enforcing agency is decided the entire controversy is terminated. The rules which must be observed in the **conduct of the business** are settled. That is not the situation in this cause. The best that can be stated here is that plaintiffs claim that an activity expressly prohibited by the Constitution of the State has not been included within the provisions of any punitive statute, and that the combined effect of the fact that the Constitution is not self-executing and the failure of the statutes to provide punishment results in a legal operation. Not at any point are we dealing with anything other than an activity clearly prohibited by the Constitution and one which, therefore, cannot be affirmatively legalized by any legislative enactment. While some courts in a few states have issued declaratory judgments in cases of the special and particular types mentioned we have not found that any court in Ohio has rendered such a judgment in any case involving merely a claimed, possible or prospective, violation of the

criminal laws of the State. Every reported case has been one involving civil or contractual rights and genuine disputes arising out of them.

In any event it is difficult to find how the instant case could qualify for a declaratory judgment. Where is the real controversy between the parties? There is no relationship between the parties to this cause differing from the relationship of every citizen in the community with the defendants, Sheriff, Mayor and Chief of Police. Plaintiffs say that the officer defendants will arrest them if they engage in certain activities which the officials believe to be violative of the criminal laws of the State. The law imposes upon the Sheriff, Mayor and Chief of Police the duty of arresting or causing the arrest of any citizen engaging in activities which they believe to be violative of the criminal laws. The Constitution and laws of the State have provided the means of protecting the rights of the citizen against his officials by adjudication of them in the courts when the official brings the citizen to the courts under formal charge. This is not oversimplifying the situation because the process is simple, thoroughly established as well as tested by time, is fully protective of the rights of free citizens and can well be said to be a vital part of the genius of democratic functioning.

The State of Ohio is plaintiff in all criminal proceedings under our penal statutes. It is not a party in this cause and the defendants have invited the Court's attention to that fact and claim it to be a fatal defect. The Court would not dispose of this cause on the basis of that defect—if defect it be. It would, or course, permit the making of new parties if that would, in its judgment, entitle plaintiffs to the relief sought. There is no existing controversy between the parties, even though the State of Ohio had been included as a defendant. It is not claimed that any "Bingo" games are being played. The plaintiffs merely want to know if, in the future, they conduct certain operations they will be subject to arrest and prosecution. Harrassment is often (especially in connection with gambling activities) used to express arrest and the term has been carried into the cases decided in foreign jurisdictions because of the fact that some legitimate business was involved and enforcement of some law, rule or regulation, claimed to be of doubtful validity, would amount to harassment. In the cases mentioned, almost without exception, acts claimed to be illegal in connection with a legal business are involved. In the instant case, acts forbidden by the Constitution and therefore clearly illegal within themselves are sought to be legalized.

The Court holds that there is not in this case any real controversy between the parties within the contemplation and requirements of the declaratory judgment statute.

Assuming that there existed a real controversy, and all proper elements and parties were present, would it be possible that such controversy could be terminated in this case by the rendition of a declaratory judgment. This Court not only finds it difficult but impossible to determine just how any judgment could terminate the controversy. The plaintiffs allege, in principle, their proposed operation. Assuming a judgment on the case as stated, would the honest belief of defendants, or either of them, that the operation as actually conducted on some future date varied in some particular from the operation declared legal justify him or them in making an arrest? Or, would the official be justified in overlooking the entire matter lest he incur some liability or find himself in contempt of this Court? This observation or query probably belongs more properly in connection with the second phase of the issue and the relief sought.

As indicated, we have not found a single case in Ohio in which the Court entered a declaratory judgment in a cause involving merely the criminal law and for the purpose of avoiding the recognized processes for the enforcement of it. Especially interesting is a case within our own jurisdiction (Cuyahoga County). **Lakewood v. Farren, 27 Abs 351.** (Court of Appeals of Cuyahoga County.)

Mrs. Farren, for pay, entertained in her home a few pre-school age children and used her automobile for transporting the children to and from their homes. The City of Lakewood sought a declaratory judgment and a restraining order to prohibit her from so driving said children without first having secured a chauffeur's license.

Syll. 2. "The restraining of defendant from driving her automobile without a chauffeur's license in conveying children to and from her home where she cared for them and entertained them for compensation is not a subject for the application of the declaratory judgment law."

The case was one in which the defendant was engaged in what is surely a lawful business but, in its detail conduct was doing something which the public authorities believed to be a violation of law but which the lady claimed was perfectly legal. The public officials deemed it wise to avoid arrest (harassment) and to seek guidance by a declaratory judgment. The Court denied the relief even though it was sought by public officials for their own protection as such officials.

See also: **League for Protection of Civil Rights etc., v. City**

of Cincinnati, 64 Oh Ap 195; and Driskill v. City of Cincinnati, 66 Oh Ap 372.

## ARE THE PLAINTIFFS ENTITLED TO A RESTRAINING ORDER?

It would be nothing short of sophistry to believe that the game of bingo as described in the amended petition is anything short of a lottery, a game of chance and a species of gambling. In briefs and arguments able counsel for the plaintiffs claims the operation evades illegality because of its character as a lottery and the amended petition admits the presence of the element of chance. **Art. XV, Sec. 6, of the Constitution of Ohio** is as follows:

"Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this State."

The Supreme Court of Ohio, in **State v. Parker, 150 Oh St, 22,** held this provision not to be self-executing, and also held that §13064 GC is constitutional. Sec. 13064 GC is as follows:

"**Penalty for promoting lottery or scheme of chance.** Whoever, for his own profit, establishes, opens, sets on foot, carries on, promotes, makes, draws or acts as "backer" or "vendor" for or on account of a lottery or scheme of chance, by whatever name, style, or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, or by any of such means, sells or exposes for sale anything of value, shall be fined, etc., etc."

Plaintiffs urge as a basis of legality of their proposed bingo operations the fact that the constitutional prohibition is not self-executing; the additional fact that §13064 GC, supra, has been declared to be constitutional and provides for punishment only of him who operates "for his own profit," and, finally, that lotteries are treated specially by §13064 GC, and do not come within the provisions of the sections of our Code dealing with gambling generally. They therefore urge and conclude that inasmuch as lotteries are prohibited or to be punished only when conducted for "one's own profit" they may be conducted with impunity for charitable purposes. To sustain that conclusion they must read into §13064 GC, and into the decision of the Supreme Court in the State v. Parker case, supra, something not to be found in either. First; they must conclude that §13064 GC authorizes or legalizes a lottery for charity just because it prohibits lotteries for one's "own profit." Second; they must conclude that when the Supreme Court declared §13064 GC constitutional it was holding, at the same time, that to conduct a lottery for a purpose other than for one's "own profit" was permissible. Neither conclusion is justified. Sec. 13064 GC, merely provides a penalty

for engaging in a lottery for one's "own profit." The Supreme Court simply held such a statute constitutional. The Court was careful to make clear that the statute was constitutional as far as it went. The statute does not even mention lotteries for charity and it has no place in any discussion of the conduct of a lottery for charitable purposes. There is nothing in §13064 GC to justify any belief that it legalizes a lottery for charitable purposes. If it was an attempt to do that it would clearly be unconstitutional.

This Court will not undertake to shackle law enforcement officials in their efforts to enforce the laws of the state, nor will it assume that they will make arrests without reasonable grounds to believe that those arrested are engaged in activities violative of the penal laws.

In a free government the right to exercise authority must be placed with a great degree of certainty and such exercise must be reasonably free from interference by any persons or officers to whom it is not specifically delegated. The duty of maintaining the public peace under our laws is definitely placed and the processes available to those charged with the duty are clear and have become generally known and effectively established by usage over many years of time. In Ohio the Sheriff of the county and the Mayor of a city or village are elected officials directly responsible to the people. The Chief of Police is under the direct supervision of the Mayor and is the superior officer of every other member of the police force.

**Sec. 2833 GC:**

"Each Sheriff shall preserve the public peace and cause all persons guilty of breach thereof, within his knowledge or view, to enter into recognizance * * * and commit them to jail in case of refusal * * *."

**Sec. 4255 GC:**

"* * * He (the Mayor) shall be the chief conservator of the peace within the corporation * * *."

**Sec. 4378 GC:**

"The police force shall preserve the peace, protect persons and property and obey and enforce all ordinances of council and all criminal laws of the state and of the United States * * *"

In addition to being a court of law this Court is clothed with general equitable jurisdiction but it is necessary to ever keep in mind that equity is intended to supply deficiencies in law and is not to be exercised as a substitute for law but to supplement it and to furnish relief in those cases in which speed may be necessary or disorder or irreparable injury may

result from the necessity of following the ordinary course of the law. Equity will not usurp the functions of the law and certainly will not interfere in the enforcement of the criminal law where a complete defense is available at law. Such interference would result in untold mischief and would remove causes from the tribunal in which they are to be tried under our Constitution and laws.

The general rule is stated in **Snyder v. City of Alliance, 41 Oh Ap 48; Lyons v. City of Cincinnati, 55 Oh Ap 458.** In the latter case reference is made to 7 R. C. L., 1048, in which the general rule is discussed at some length.

In 28 Am. Jur. page 413, Sec. 233, et seq., the general rule is stated to the effect that on sound principle of public policy the courts ought not to interfere with the representatives of the public in their efforts to enforce the law, and that it has become a well established rule that equity will not enjoin criminal proceedings or attempt to stay the hands of peace officers in enforcing criminal laws except where the law attempted to be enforced is unconstitutional and void and the enforcement will result in irreparable injury to vested property rights.

Bingo is a simple operation not involving any paraphernalia of a cumbersome, extensive or expensive character, and it cannot possibly be successfully claimed that the intervention of a court of equity is necessary to protect those threatened with arrest for promoting it or indulging in it, whether for charity or otherwise. This action involves nothing in fact beyond the fear of the plaintiffs that they will be arrested and successfully prosecuted if they resume their bingo operations. If such operations are resumed and arrests made, the issues will be joined in a court of law and there decided under the rules applicable in such court to the trial of such issues.

Able counsel for the plaintiffs will undoubtedly feel hurt by the apparent disregard by the Court of the exhaustive briefs filed in this cause and the authorities therein cited. The Court has perused them carefully and fully appreciated them but takes the view that the relief sought by the amended petition cannot be granted in this cause and that, therefore, the right or lack of right of plaintiffs to engage in the operation of bingo games for charity is not reached. The briefs and labors of counsel are eloquent testimony to the broad issues which a court of equity would have to inquire into and decide to afford to plaintiffs the relief which they seek—issues which are to be, and easily can be, determined in a court of law without risk or injury to plaintiffs or others beyond those risks and injuries, if such they may be termed, which are the

lot of any citizen who engages in activities believed by law-enforcing officials to be violations of the criminal laws.

The Court has made his own exhaustive and careful search of the authorities in our own state and in other jurisdictions on the two questions involved in this cause (the right to a declaratory judgment and the right to a restraining order) and is quite convinced that the amended petition does not state facts which entitle the plaintiffs to any relief at the hands of this Court.

A decree will be entered on the Journal as of this date sustaining the demurrers to the amended petition and dismissing the amended petition at the costs of the plaintiff. Exceptions will be noted, and bond for appeal will be fixed at $200.00.