[Civ. No. 30082. Second Dist., Div. One. Oct. 10, 1966.]

JULIUS MANCHEL et al., Plaintiffs and Respondents, v.
THE COUNTY OF LOS ANGELES et al., Defend-
ants and Appellants.

502

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Defendants and Appellants.

Burton Marks, Green, Simke & Lasher, Stuart A. Simke and Terry Steinhart for Plaintiffs and Respondents.

Phalen G. Hurewitz, A. L. Wirin, Fred Okrand and Laurence R. Sperber as Amici Curiae on behalf of Plaintiffs and Respondents.

FOURT, J.—Plaintiff filed a complaint for declaratory and injunctive relief seeking a determination as to whether the card game of panguingue is one of skill or chance and, if a game of skill, an injunction against the defendants from arresting plaintiffs for playing panguingue. A trial was had before the court, judgment was entered declaring panguingue (played according to the rules established by the parties) was a game of skill and the injunction was issued against the defendants.

The matter was presented to the court on the basis of a first amended complaint as stipulated to in the joint pretrial statement of the parties. The essential portions of the complaint alleged that the county had enacted an ordinance dealing with the criminal sanctions imposed upon persons permitting the playing of, or actually playing, certain card games within Los Angeles County;[1] that the plaintiffs had been, and still were desirous of playing the game of panguingue for money within an unincorporated portion of the county; that a dispute had arisen, and an actual controversy existed between the parties, in that plaintiffs contended that panguingue is a game of skill and defendants contended it is not a game of skill but one of chance and therefore that to play the game is a crime under this ordinance; that the sheriff, through his agents, and so forth, threatened and continued to threaten to arrest plaintiffs if they played, or permitted the playing of, panguingue for money and that because of these threats of arrest, plaintiffs sustained, and would continue to sustain, great and irreparable injury, by being deprived of their right to play panguingue for money for their pleasure, except under threat and opprobrium of arrest and that the injury sustained would make damages inadequate. The plaintiffs prayed for a declaration that panguingue is not a game of chance; that the playing of panguingue for money is not a crime in violation of said ordinance; and for an injunction restraining defendants from threatening to arrest, or arresting these plaintiffs, or from enforcing the ordinance against them. There is not now, nor has there been, any contention that the ordinance involved is invalid.

---

[1] A copy of the ordinance was attached to the complaint, but the one attached to the defendants' answer was found to be the true copy. Ordinance No. 7615 is an ordinance *"prohibiting gambling and related activities."* (Italics added.) Article 2, section 21, reads: "A person shall not deal, play, carry on, open, cause to be opened, or conduct any game of chance played with cards, dice, or other device, for money, checks, credits, or other thing of value. A person shall not bet at any such game."

Defendants answered and, in effect, stated that the game of panguingue, as played by plaintiffs, is not a game of skill but is a game of chance as the same is set forth in said ordinance and that plaintiffs therefore are not entitled to any relief.

The cause came on for trial before the court, a jury was waived and extensive testimony was presented by the plaintiffs to the effect that, according to the rules established for playing panguingue, said game, in the opinion of plaintiffs' witnesses, is a game of skill. Defendants' evidence was to the contrary. Thereafter, the court rendered its findings of fact, which, insofar as here pertinent, set forth that the plaintiffs have been and still are desirous of playing the game of panguingue for money within the unincorporated portion of Los Angeles County and that the sheriff has threatened and continues to threaten to arrest the plaintiffs if they play panguingue for money; that an actual controversy does exist between plaintiffs and defendants as to whether panguingue is a game of skill or a game of chance. The court further found that inherent in the card game of panguingue, as defined by the rules of the game introduced into evidence is ". . . a continually recurring necessity in the play of the hand to make decisions, and a scope for deductive analysis, psychology, alertness and mental ascendancy over one's opponents, which, considered together, will ordinarily be determinative of the outcome of the game .. . . [and] . . . the card game of panguingue as defined by the rules of the game . . . requires knowledge, understanding, study of said rules, and experience in the use thereof and play of the game, and possession thereof gives such a predominate benefit over a person who does not possess the same, that the result, is predictable and practically inevitable''; that the game therefore is one of skill and not of chance and that plaintiffs were entitled to a judgment as prayed for.

The judgment decreed that the complaint stated a valid cause of action; that section 21 of article II of the ordinance only prohibits games of chance and not those of skill; that the card game of panguingue, as defined by the rules of the game, is a game of skill and not a game of chance within the meaning of section 21, article II of the ordinance and that the playing or permitting the playing of panguingue for money is not a crime. The defendants were permanently enjoined and restrained from threatening to arrest or from arresting plaintiffs for playing panguingue for money. Defendants filed a timely notice of appeal from the judgment.

■ Although appellants have raised several assignments

of error respecting evidentiary matters, we shall first deal with their contention that the complaint fails to state a cause of action. It is apparent that this last mentioned contention is being raised for the first time on appeal. However, failure to demur to a complaint for failing to state facts sufficient to constitute a cause of action does not constitute a waiver and may properly be raised for the first time on appeal. (2 Witkin, Cal. Procedure (1954) Pleading, § 487, p. 1474; *Wilson* v. *Sharp,* 42 Cal.2d 675, 677 [268 P.2d 1062]; *Roberts* v. *Roberts,* 241 Cal.App.2d 93, 98-99 [50 Cal.Rptr. 408].)

As stated in 43 C.J.S., Injunctions, section 156, pages 768-771, ''The general rule, sometimes by virtue of statutory provisions, is that an injunction will not be granted to stay criminal or quasi-criminal proceedings, whether the prosecution is for the violation of the common law or the infraction of statutes or municipal ordinances, or to stay the enforcement of orders of a board or commission. This general rule is based, in addition to other considerations, on the principle that equity is concerned only with the protection of civil and property rights, and is intended to supplement, and not usurp, the functions of the courts of law, and on the fact that the party has an adequate remedy at law by establishing as a defense to the prosecution that he did not commit the act charged, or that the statute or ordinance on which the prosecution is based is invalid, and, in case of conviction by taking an appeal.

''. . . The rule applies . . . to prosecutions which are merely threatened or anticipated as well as to those which have already been commenced, . . .

''. . . It is not a ground for injunctive relief that the prosecuting officer has erroneously construed the statute on which the prosecution is based so as to include the act or acts which it is the purpose of the prosecution to punish.'' In *Fairchild* v. *Brock,* 88 Cal.App.2d 425, 429 [199 P.2d 9], the court quotes the general rule, as stated in California Jurisprudence, to be that '' '[a]n injunction will not be granted to protect a person from prosecution for the alleged commission of a criminal offense on a showing that he is not guilty of such offense or that the law does not apply to him. The court having jurisdiction over criminal offenses is the forum in which such questions of fact must be determined. . . .' '' And in *Agnew* v. *City of Los Angeles,* 190 Cal.App.2d 820, 828 [12 Cal.Rptr. 507], the court stated: ''The challenged provisions of the municipal code are presumed to be valid [citation], and enforcement is presumed to be lawful. [Citation.]

An injunction will not issue to prevent a legislative act by a municipal corporation unless a showing of invalidity is made. [Citations.]''

The Supreme Court stated in *Financial Indem. Co. v. Superior Court*, 45 Cal.2d 395, 402 [289 P.2d 233] : ''Section 3423, subdivision 4, of the Civil Code and also section 526, subdivision 4, of the Code of Civil Procedure provide that an injunction cannot be granted 'to prevent the execution of a public statute, by officers of the law, for the public benefit.' These sections do not bar judicial action where the invalidity of the statute under which he is acting is shown [citation] or when the officer exceeds his powers. [Citation.]''

''A court acts in excess of its jurisdiction if it attempts to enjoin the enactment or enforcement of a valid public statute or ordinance.'' (*City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423, 430 [333 P.2d 745].)

Respondents have failed to allege throughout their pleadings any basis upon which the trial court could grant an injunction. They do not contend that the ordinance is unconstitutional, or that the enforcement of this statute would involve the invasion of property rights which would result in irreparable injury. Respondents allege that they have sustained irreparable injury by being deprived of their right to play panguingue for money for their pleasure. Certainly this so-called irreparable injury could not be classified as a property right. Nor is the threat of arrest under the circumstances a proper basis to permit a court to grant injunctive relief. The court made no finding that the ordinance was unconstitutional or that enforcement would constitute an invasion of plaintiffs' property rights resulting in irreparable injury. The respondents failed to allege facts sufficient legally to afford them injunctive relief against these appellants and the court erred in granting the permanent injunction.

Respondents contend that the controversy was a proper subject matter for declaratory relief and that when the court determined panguingue to be a game of skill, the issuance of the injunction was proper. We are of the opinion that construction of this ordinance under the circumstances was not a proper matter to be heard in a declaratory relief action.

''It has been laid down as a general rule that courts of equity will not interfere with the enforcement of criminal laws unless it is in connection with unconstitutional enact-

ments of the criminal laws, and where their enforcement would invade property rights.

" . . . . . . . . . . . . .

■ "Injunctions against criminal prosecutions may not ordinarily be granted in connection with an action for declaratory relief." (2 Anderson, Actions for Declaratory Judgments (2d ed.) Criminal Laws, § 644, p. 1471.)

And in 26 C.J.S. Declaratory Judgments, section 33, page 111, it is stated: "Since, ordinarily, equity cannot be invoked to enjoin the prosecution of a crime, such relief should not, in effect, be accorded pursuant to a declaratory judgment law. . . . A declaratory judgment should not be granted where its only effect would be to decide matters which could be better decided in the criminal courts of the state, . . ."

The authorities cited by respondents to substantiate their view are not persuasive. In *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974] the plaintiff sought declaratory relief and an injunction on a matter involving a criminal registration act. The parties did not challenge or question the use of injunction and declaratory relief, but the court, in a footnote at page 678, approved this procedure since it would injure "plaintiff's rights." The court was referring to the fact that plaintiff alleged the *ordinance violated his constitutional rights* and *was an unconstitutional act* and he would suffer irreparable injury from its enforcement. No such contention or allegation was proffered by the respondents herein, and thus the *Abbott* case cannot control.

In *Orloff* v. *Los Angeles Turf Club,* 30 Cal.2d 110 [180 P.2d 321, 171 A.L.R. 913] plaintiff commenced an action for injunctive relief against the Los Angeles Turf Club, a private corporation, and not a governmental entity as in the case at bench. The action in *Orloff* was based upon the "so-called civil rights statutes." The court held that the remedy of damages afforded by the statute was not exclusive and he was entitled to injunctive relief. The court therein stated: "If the objects of the Civil Code are to be effectuated, and justice promoted as required by section 4 thereof, certainly specific relief should be available where the object is to prevent the exclusion of persons from certain places and there are no valid reasons why such relief should be denied." (P. 114.) Such considerations are not available to respondents in the instant case.

The case of *Zeitlin* v. *Arnebergh,* 59 Cal.2d 901 [31 Cal. Rptr. 800, 383 P.2d 152] cited by respondents is also distinguishable. Relief was afforded the "would-be reader" because

of the fact that ". . . in the absence of declaratory relief, [he] *may be deprived of his constitutional rights.*" (Italics added.) (P. 906.) Zeitlin was in the bookselling business, and if he were denied declaratory relief, it might result in a form of censorship which ". . . could constitute an unlawful restraint upon the dissemination of literature not otherwise censorable." (P. 906.)

There are no constitutional rights involved in the case at bench as in *Zeitlin, supra.* In the absence of a deprivation of a constitutional right or other essential factors, we find no basis to allow the court to grant declaratory relief or to issue the injunction requested.

The reasoning followed by the Court of Common Pleas of Ohio in *Veterans of Foreign Wars* v. *Sweeney,* 64 Ohio L. Abs. 277 [111 N.E.2d 699], affirmed 64 Ohio L. Abs. 288 [111 N.E.2d 706] is sound and applicable to the case at bench. The plaintiffs sought a declaratory decree in reference to a bingo game and an order enjoining defendants, the sheriff, mayor and chief of police from interfering with them in the operations. Even though the court held that ". . . there is not in this case any real controversy between the parties within the contemplation and requirements of the declaratory judgment statute" the court went on to discuss whether, if there existed a real controversy, it could be terminated by declaratory judgment. At page 703 [111 N.E.2d] it is stated: ". . . This court not only finds it difficult but impossible to determine just how any judgment could terminate the controversy. The plaintiffs allege, in principle, their proposed operation. Assuming a judgment on the case as stated, would the honest belief of defendants, or either of them, that the operation as actually conducted on some future date varied in some particular from the operation declared legal justify him or them in making an arrest? Or, would the official be justified in overlooking the entire matter lest he incur some liability or find himself in contempt of this court? This observation or query probably belongs more properly in connection with the second phase of the issue and the relief sought.

"As indicated, we have not found a single case in Ohio in which the court entered a declaratory judgment in a cause involving merely the criminal law and for the purpose of avoiding the recognized processes for the enforcement of it."

In answer to the question as to whether the plaintiffs, Veterans of Foreign Wars, were entitled to a restraining order, the court stated: "This court will not undertake to

shackle law enforcement officials in their efforts to enforce the laws of the state, nor will it assume that they will make arrests without reasonable grounds to believe that those arrested are engaged in activities violative of the penal laws." (P. 704 [111 N.E.2d].)

"In addition to being a court of law this court is clothed with general equitable jurisdiction but it is necessary to ever keep in mind that equity is intended to supply deficiencies in law and is not to be exercised as a substitute for law but to supplement it and to furnish relief in those cases in which speed may be necessary or disorder or irreparable injury may result from the necessity of following the ordinary course of the law. Equity will not usurp the functions of the law and certainly will not interfere in the enforcement of the criminal law where a complete defense is available at law. Such interference would result in untold mischief and would remove causes from the tribunal in which they are to be tried under our Constitution and laws." (P. 705 [111 N.E.2d].)

It is readily apparent that in the case before us we are not called upon to settle some subtle adjustment of a business practice or regulation which affects business, a profession or industry. The respondents are not presently operating panguingue parlors (gambling halls) but merely assert that they want to be able to play the game for money unmolested. They are not professional people such as pharmacists or accountants who seek to test some administrative rule before subjecting themselves to the prosecution of a disciplinary hearing in their professional capacity. They are not presently seeking a license to operate a gambling hall. They are not businessmen who are attempting to steer a legitimate course among a maze of prohibitory laws.

The purpose of a declaratory relief action is to quiet and stabilize an uncertain or disputed jural relationship—to afford relief from the uncertainty and insecurity attendant on controversies over legal rights of consequence and to make the courts more serviceable to the people. Realism dictates that these two respondents are not expending the time, money and effort involved in this action simply to have it determined that they can sit down in a head-and-head game of panguingue and not be disturbed by the police—amusement has its value perhaps, but the amusement thus accorded is not a property right of sufficient significance to have the courts expend literally hundreds of hours of time in an injunction or declaratory relief proceeding. We are aware of the demoralizing influence of gambling and of the tendency upon the large

numbers of persons to engage therein and of the readiness of many operators to furnish gambling facilities to those who may be so inclined.

The sheriff is sworn to, and is under a duty to, enforce the criminal laws and in the performance of that duty he is in part protected by law in the exercise of official discretion. It is for the law enforcement officer in the first instance to decide whether plaintiffs are violating any criminal laws. This discretionary power is too vital to the interest of public order to be subjected to restraint by courts. It is a power possessed and exercised as a part of the independent co-ordinate power of the executive branch of the government, and for that reason, if for no other, is not under the circumstances subject to interference by the judicial branch of the government. It is obvious that panguingue can be, and many times is, played differently than as indicated in this case, and when so played it is not a game of skill, but is clearly a game of chance. If the prosecuting agencies, at a later date, find further facts which in the opinion of the officers of such agencies give an entirely different color to the game, or that the rule of the game be changed ever so little, or that added evidence may be attained which sheds a new light upon the game—are the civil courts to impede the administration of justice by enjoining the law enforcement officials who may threaten to act under a concededly valid ordinance?

It has been appropriately said that ''the futility of resorting to equity to determine whether certain or uncertain facts constitute a crime is apparent when we consider the different measures of proof in criminal and civil cases.

Should equity declare on disputed testimony or conflicting inferences by a fair preponderance of the evidence that a penal violation was proved, what could be the effect? None. It would not and could not be binding or res judicata or even as *stare decises* in a subsequent prosecution where guilt must be established beyond a reasonable doubt. Should equity hold that no offense had been committed, it would not be binding when the subsequent proof varied. In the meantime the applications for injunctions staying criminal trials pending the hearing of the equity cases for declaratory relief would disrupt prosecutions for crime and we would have more delays than at present. Policy is to reduce delays—not create them.

There is no need nor necessity for a resort to a trial in equity to determine whether a scheme or device is gambling within the penal law. Might as well try out a larceny or a bigamy case in equity.

No doubt criminal prosecutions are always annoying and may disarrange the defendant's income and finances but never yet has this been sufficient to change the usual and customary course of prosecutions for crime.

The declaratory judgment has proved and no doubt is a useful procedure, but its usefulness will soon end when its advocates seek to make it a panacea for all ills, real or imaginary.

The personal rights of respondents will be adequately protected in the guarantees surrounding the defense of an accused person and in any action at law for damages for wrongful prosecution, arrest or imprisonment.

We are persuaded that the complaint failed to state facts sufficient to constitute a cause of action. In view of this conclusion, we need not consider the remainder of appellants' assignments of error for the matter must be reversed, and an order entered dismissing the complaint.

Judgment reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 31, 1966, and respondents' petition for a hearing by the Supreme Court was denied December 7, 1966.