[Civ. No. 29880.    Second Dist., Div. Five.    July 31, 1967.]

CALIFORNIA WATER & TELEPHONE COMPANY et al., Plaintiffs and Respondents, v. THE COUNTY OF LOS ANGELES et al., Defendants and Appellants.

Burris & Lagerlof and H. Jess Senecal for Plaintiffs and Respondents.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Defendants and Appellants.

HUFSTEDLER, J.—The County of Los Angeles and the county engineer appeal from a judgment declaring that the county "Water Ordinance," ordinance No. 7834, cannot constitutionally apply to investor-owned public utilities and enjoining the county and the county engineer from enforcing the ordinance against the public utilities.

## Statement of the Case

The action was brought by the public utilities and the California Water Association, an organization to which each of the respondent public utilities belongs,[1] on behalf of the respondents and all other investor-owned public utilities serving water within the unincorporated area of the County of Los Angeles, to test the constitutionality of the Water Ordinance and certain related ordinances as applied to them.

Respondents averred that the appellants could attempt to compel them to comply with the Water Ordinance and certain related ordinances, that the challenged ordinances could not constitutionally apply to them because the state has fully occupied the field of public utilities regulation by adopting article XII, section 23 of the California Constitution and the state Public Utilities Code, and that appellants were entitled to a declaration that the ordinances as applied to them were unconstitutional and an injunction restraining their enforcement against respondents. At the trial respondents withdrew their request for relief in respect of all ordinances other than the Water Ordinance.

Appellants countered with the alternative contentions that there was no justiciable controversy, that the ordinance could constitutionally apply to respondents, and that even if some of the ordinance could not apply, one section of it was constitutionally applicable to respondents.

The facts are not disputed. Respondents are private corporations which own and operate plants and equipment for the production, transmission and delivery of water. Each of the respondents furnishes water within the unincorporated sections of the County of Los Angeles. On August 2, 1960, the board of supervisors adopted the Water Ordinance (No. 7834). For the recited purpose of promoting a minimum level of fire protection performance for water supply facilities the Water Ordinance requires that all persons who supply domestic water to more than one customer[2] must obtain either a

---

[1]California Water Association, a nonprofit organization, is not a public utility. The trial court refused relief to the California Water Association on the apparent ground that the association had no standing to challenge the Water Ordinance. No appeal has been taken by California Water Association.

[2]Section 82 of the Water Ordinance defining "water utility" states: "The term 'Water Utility' shall mean any person, firm, private, quasi-public or public agency supplying or purporting to supply other than at wholesale water for any purpose other than irrigation or water replenishment to more than one retail customer or stockholder. . . ."

"Water Utility Certificate of Registration" or a "Water Utility Authorization" as a condition precedent to the construction of any portion of a water system.[3] The water utility certificate of registration is a form filed with the county engineer containing an agreement to abide by the terms of the Water Ordinance.[4] The water utility authorization is obtained by filing an application with the Water Works and Utility Division of the office of the engineer which includes the plans and specifications of the water facility. If the engineer approves the plans and specifications, he issues the authorization. The county engineer is delegated authority to require revisions of plans and specifications and to promulgate standards of materials and construction to be published in a utility manual, to which standards the applicant must adhere.[5] The Water Ordinance sets detailed requirements for service, design and construction of water facilities.[6]

Section 152 of the Water Ordinance requires plans and specifications for water service to new subdivisions to be submitted to the county engineer "as required by Section 196 of Ordinance No. 4478, entitled 'Subdivision Ordinance' " and further requires that there shall be included with such plans and specifications "a certificate from a water utility that the proposed system can be operated by the water utility, and that the system will in every particular, meet the requirements of this ordinance." Section 153 provides that " [a] water utility . . . shall supply to the applicant for a building permit the certificate, if any, required by Section 307 of said Ordinance No. 2225, the Building Code,[7] if the facts are such

---

[3]Section 151 of the Water Ordinance provides in part: "A person to whom constitutionally this ordinance can apply shall not construct any portion of a water system which is subject to the provisions of this ordinance without first having obtained a Water Utility Certificate of Registration."

Section 154 of the same ordinance provides: "A person legally required to comply with this Ordinance and not having a water utility certificate of registration shall not construct any portion of a water system, subject to the provisions of this Ordinance without first having obtained a Water Utility Authorization."

[4]Section 151 of the Water Ordinance.

[5]Water Ordinance, sections 8, 155, 252. The county engineer accordingly published a utility manual setting forth the standard specifications establishing minimum standards of the County of Los Angeles for water mains and water systems, materials and construction.

[6]Water Ordinance, sections 201-266.

[7]Ordinance No. 2225, as amended by ordinance No. 7835, added section 307, which requires that application for a building permit shall be accompanied by " (a) a certificate from a water utility that it can supply

that such water utility . . . truthfully can execute such a certificate.''[8]

A violation of any of the provisions of the Water Ordinance constitutes a misdemeanor. (Section 17.)

Following the passage of the Water Ordinance, the county engineer notified respondents and other water purveyors of the adoption of the Water Ordinance and transmitted copies of the utility manual promulgated pursuant to the Water Ordinance. In December of 1960 the county engineer advised respondents of the registration requirements and urged them to comply with the Water Ordinance.

Respondents registered as required by the county engineer. At all times respondents have complied with the provisions of the Water Ordinance, and there has been no prosecution of any of the respondents.

### Justiciable Controversy Presented

■ Appellants principally contend that respondents are not entitled to either declaratory or injunctive relief because the cause was never justiciable. Under the encompassing label of nonjusticiability, appellants present a clutch of arguments variously challenging the existence of any ground to invoke the judicial process, the propriety of the trial court's exercising its discretion in granting declaratory relief, the merits of the declaration issued, and the basis for issuing the injunction.

The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. ■ The concept of justiciability involves the intertwined criteria of ripeness and standing. A controversy is ''ripe'' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.[9] One

---

water to the proposed structure in compliance with Ordinance No. 7834, entitled 'Water Ordinance', adopted August 2, 1960, . . .''

[8]Concurrently with the amendment of the Building Code by ordinance No. 7835 zoning ordinance No. 1494 was amended by ordinance No. 7874 to require as a condition precedent to obtaining a zoning change the filing of a certificate ''from the person who is to supply water that he can supply water as required by said Ordinance No. 7834, also stating the amount and pressure, which certificate also shall be signed by the Forester and Fire Warden, or a certificate from the County Engineer that such water will be available.'' Ordinance No. 4478 was also amended by ordinance No. 7875 requiring compliance with the provisions of the Water Ordinance as a condition to approval of a subdivision.

[9]It is easier to illustrate ripeness than it is to define it. For example, in *Silva* v. *City & County of San Francisco* (1948) 87 Cal.App.2d 784

who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.[10]  When justiciability in a jurisdictional sense exists,[11] the ripeness and standing concepts are metamorphosed in a declaratory relief action into guides for the exercise of judicial discretion in granting or withholding that remedy, and the trial court's exercise of discretion will not be disturbed on appeal unless its discretion has been abused. (*Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747]; *Bess* v. *Park* (1955) 132 Cal.App.2d 49, 52 [281 P.2d 556]; *Mefford* v. *City of Tulare* (1951) 102 Cal.App.2d 919, 922 [223 P.2d 847].)

The present controversy was within the judicial ken. The factors which appellants say destroy justiciability are not in the nature of jurisdictional facts. They are merely factors which are properly considered in exercising discretion committed to the court by section 1061 of the Code of Civil Procedure: "The court may refuse to exercise the power granted by this chapter in any case where its declaration or

[198 P.2d 78], the landowner could not obtain an adjudication of the value of his property which might be subjected to future condemnation proceedings where no taking had yet occurred. In *Pittenger* v. *Home Sav. & Loan Assn.* (1958) 166 Cal.App.2d 32 [332 P.2d 399], the controversy was overripe or moot. No justiciable controversy was presented against the holder of plaintiff's note and deed of trust where the holder, who refused the tender of a required fire insurance policy, sold the note and security after suit was filed to a third person and the latter accepted the policy. *Merkley* v. *Merkley* (1939) 12 Cal.2d 543 [86 P.2d 89], held nonjusticiable a claim primarily upon the ground that the controversy was not ripe, but the case also involves a lack of standing to sue. There a former wife sought to establish her ex-husband's interest in property on the theory that she might wish to resort to that property if in the future he might default in paying alimony and support to her.

[10]*E.g.*, *Jennings* v. *Strathmore Public Utility Dist.* (1951) 102 Cal. App.2d 548 [227 P.2d 838] (plaintiff had no standing to challenge validity of contracts for construction of sewage system where his only interest was as a citizen and a potential worker on the project). See also Note, *Judicial Determinations in Nonadversary Proceedings*, 72 Harv. L. Rev. 723, 724 (1959); 1 Witkin, Cal. Procedure (1954) § 10, p. 497.

[11]When the controversy is one which is outside the jurisdictional purview, it cannot be litigated even if the party seeking relief is intensely interested and even if the dispute is fully ripened. (*In re McGee* (1951) 36 Cal.2d 592, 599 (wholly political issue, nonjusticiable); *Erickson* v. *Gospel Foundation of Cal.* (1954) 43 Cal.2d 581, 585 [275 P.2d 474] (ecclesiastical controversy outside court's temporal realm).)

determination is not necessary or proper at the time under all the circumstances.''

Among the factors affecting exercise of judicial discretion are these: the penal character of the ordinance attacked, the need for now determining the validity of the ordinance, the character of the respondents' interest and that of the public in the subject matter, and the existence of alternative remedies, if any, to test the validity of the ordinance.

Declaratory relief is not foreclosed simply because the subject matter of the action is a penal statute or ordinance. (*Charles L. Harney, Inc.* v. *Contractors' etc. Board* (1952) 39 Cal.2d 561 [247 P.2d 913]; *LaFranchi* v. *City of Santa Rosa* (1937) 8 Cal.2d 331 [65 P.2d 1301, 110 A.L.R. 639]; *Sandelin* v. *Collins* (1934) 1 Cal.2d 147 [33 P.2d 1009, 93 A.L.R. 956]; *Katzev* v. *County of Los Angeles* (1959) 52 Cal.2d 360 [341 P.2d 310] (passim). See also *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 678 [3 Cal.Rptr. 158, 349 P.2d 974]; *Portnoy* v. *Superior Court* (1942) 20 Cal.2d 375, 378 [125 P.2d 487].) But this does not mean that declaratory relief is always appropriate to challenge the validity of a penal statute or to obtain a construction of it for a plaintiff's benefit. Declaratory relief is properly denied, for example, if the factual matrix is insufficiently set to permit a useful and intelligent adjudication to be made (*Witschner* v. *City of Atchison* (1941) 154 Kan. 212 [117 P.2d 570]), or if the issues can be better decided in a criminal proceeding (*People* v. *Ray* (1960) 181 Cal.App.2d 64, 67 [5 Cal.Rptr. 113]; see also *Nathan H. Schur, Inc.* v. *City of Santa Monica* (1956) 47 Cal.2d 11, 17 [300 P.2d 831]; *Manchel* v. *County of Los Angeles* (1966) 245 Cal.App.2d 501, 507 [54 Cal.Rptr. 53]). The character of the challenged statute or ordinance is merely one factor to be considered with all the other facts and circumstances to determine the propriety of granting declaratory relief.

A person need not violate or plan to violate a penal ordinance before he can obtain a declaration construing it and deciding its application to him. (*Cf. Charles L. Harney, Inc.* v. *Contractors' etc. Board, supra,* 39 Cal.2d 561; *Mefford* v. *City of Tulare, supra,* 102 Cal.App.2d 919, 922; see also *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 906 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].) To hold otherwise is like ''telling the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool is to eat

it." (*Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 678, n. 2.) The remark of the court in *County of Colusa* v. *Strain* (1963) 215 Cal.App.2d 472, 477 [30 Cal.Rptr. 415], that "[i]t must be clear that the citizen intends to perform the disputed act" to justify declaratory relief, does not mean that intent to violate an ordinance is a condition precedent to declaratory relief. In the context of the case all that was meant is that one seeking such relief must demonstrate the reality of his interest in a present adjudication. (*Charles L. Harney, Inc.* v. *Contractors' etc. Board, supra,* 39 Cal.2d 561, 564.)

█ A prosecution based on violation of a challenged ordinance is relevant in determining the availability of declaratory relief to test the validity of that ordinance, but it is not a condition precedent to declaratory relief nor necessarily a bar to such relief. If a person seeking declaratory relief is actually being prosecuted, it is obvious that the controversy is ripe and that he is interested in the outcome. But even though both criteria are present, declaratory relief may not be appropriate if the very determination he seeks can be just as well or better made in the pending criminal proceeding. (See *People* v. *Ray, supra,* 181 Cal.App.2d 64, 67.) █ If the criminal prosecution has concluded, declaratory relief may be unavailable because the controversy is over. But if the same defendant may be subjected to future prosecution based upon different violations of the same or similar ordinances, the prior criminal prosecution does not foreclose declaratory relief. (*County of Colusa* v. *Strain, supra,* 215 Cal.App.2d 472, 476-477; see also *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d 901, 907.) A threat to prosecute is at best some evidence of a dispute between the parties. If a person seeking declaratory relief has never violated the ordinance he seeks to have construed, a threat of prosecution is meaningless. If he has actually violated the ordinance, those who are charged with enforcing it are obliged to do their duty, and threats to perform a legal duty add nothing.[12] █ The existence of a penal statute or ordinance apparently applicable to the exist-

---

[12]The conversation in some of the decisions about threatened prosecution usually relates to the availability of injunctive relief. The language of threat is a legal cliché in equity proceedings to obtain an injunction. For examples of decisions using the threat terminology, see *City of Santa Monica* v. *Superior Court* (1964) 231 Cal.App.2d 223 [41 Cal.Rptr. 824], and *Golden Gate Sightseeing Tours, Inc.* v. *City & County of San Francisco* (1937) 21 Cal.App.2d 582 [69 P.2d 899], cited by appellants.

ing conduct of a person who seeks declaratory relief is itself a "threat" to impending prosecution.

Respondents' interest in obtaining a declaration respecting the validity of the Water Ordinance is neither academic or remote. The constitutional amenability of the public utilities to the local regulations prescribed by the Water Ordinance has a continuing effect upon the conduct of respondents' business. That the impact of the ordinance is not necessarily immediate does not make respondents' interest in the adjudication remote. Respondents' business requires a continuity of development and planning which extends well into the future. Water facilities and equipment must be planned substantially in advance of consumer demand. In order intelligently to plan such facilities, utilities must know whether they are required to comply with the specifications of the Water Ordinance and the utility manual or whether they must comply solely with the specifications promulgated by the Public Utilities Commission. To say that respondents have no present interest in the subject matter is rather like saying that law students have no real interest in the subjects to be covered on the bar examination until they start taking the examination.

However, even aside from the interest which respondents have in a determination of the validity of the Water Ordinance, the public interest requires that there be an adjudication to settle the constitutional question here presented. Both the respondents and appellants are well aware that the amenability of water utilities to local control is a matter of substantial public concern. Were there any doubt about the justiciability of the controversy, that doubt would be resolved in favor of present adjudication, because the public is interested in the settlement of the dispute. (*California Physicians' Service* v. *Garrison* (1946) 28 Cal.2d 790, 801 [172 P.2d 4, 167 A.L.R. 306]; *Golden Gate Bridge etc. Dist.* v. *Felt* (1931) 214 Cal. 308 [5 P.2d 585]; *Collier* v. *Lindley* (1928) 203 Cal. 641, 645 [266 P. 526]; *County of Colusa* v. *Strain, supra,* 215 Cal.App.2d 472, 477-478.)

The trial court did not abuse its discretion in deciding that declaratory relief was warranted.

### Water Ordinance Unconstitutional

Respondents contend that the state has fully occupied the field of regulation of water utilities, thereby depriving the county of any power to legislate in that field. Appel-

lants urge that the Water Ordinance is a valid exercise of its police power and that the ordinance does not extend into an area fully occupied by general law and that it does not conflict with existing general law. Appellants further argue that even if some of the provisions of the Water Ordinance are invalid as applied to the respondents, at least the provision of the Water Ordinance requiring respondents to furnish certificates to building permit applicants falls outside the preempted area.

Local legislation in conflict with general law is void.[13] Conflicts exist if the ordinance duplicates,[14] contradicts,[15] or enters an area fully occupied by general law, either expressly or by legislative implication.[16] If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a "municipal affair."[17] No exact formula exists upon which to forecast precisely the application of implied legislative preemption. One of the clouds in the crystal ball is the definition of the field which may be ultimately adopted in any particular case. If the definition is narrow, preemption is circumscribed; if it is

---

[13]Section 11 of article XI of the California Constitution is both a grant and a limitation upon the power of cities and counties to enact legislation: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

[14]*Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 176 [339 P.2d 801]; *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1]; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515].

[15]*Ex parte Daniels* (1920) 183 Cal. 636, 642-645 [192 P. 442, 21 A.L.R. 1172].

[16]*E.g., Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 682-688 [3 Cal.Rptr. 158, 349 P.2d 974]; *Chavez* v. *Sargent, supra,* 52 Cal.2d 162, 176-178; *In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]; *People* v. *Moore* (1964) 229 Cal.App.2d 221, 226-227 [40 Cal.Rptr. 121]; *Baldwin Park County Water Dist.* v. *County of Los Angeles* (1962) 208 Cal.App.2d 87 [25 Cal.Rptr. 167] (holding the Water Ordinance void as applied to certain public water and irrigation districts).

[17]*In re Hubbard* (1964) 62 Cal.2d 119, 125 [41 Cal.Rptr. 393, 396 P.2d 809]; *In re Loretizo* (1963) 59 Cal.2d 445 [30 Cal.Rptr. 16, 380 P.2d 656]; *In re Koehne* (1963) 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633]; *In re Zorn* (1963) 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635]; *People* v. *Lopez* (1963) 59 Cal.2d 653 [30 Cal.Rptr. 813, 381 P.2d 637]; *Whitney* v. *Municipal Court* (1962) 58 Cal.2d 907 [27 Cal.Rptr. 16, 377 P.2d 80]; *In re Lane, supra,* 58 Cal.2d 99; *In re Moss* (1962) 58 Cal.2d 117 [23 Cal.Rptr. 361, 373 P.2d 425]; *Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674.

broad, the sweep of preemption is expanded. For example, the Supreme Court defined the subject matter of the legislation considered in the *Hubbard* case,[18] not as "all gambling," but only as those forms of gambling expressly enumerated by section 330 of the Penal Code, thus permitting local supplementary legislation in respect of other forms of gaming. But in the *Lane* case,[19] the field was broadly defined as "the criminal aspects of sexual activity," thus encompassing a very wide range of legislation previously assumed to be outside the area covered by general law.

The litigants, well knowing what kind of crop will grow from the seeds of definition, have characterized the field accordingly: Respondents say that the field, both of the general and local law, is "regulation of investor-owned public utilities;" appellants say that the field of the ordinance is "fire protection," a local affair the subject matter of which has not been enveloped by the state. It is unnecessary for us to nurture either of these seeds. If the local legislation conflicts with general law or is a matter of state-wide rather than strictly local concern, the Water Ordinance is void whether or not the general law totally occupies the "field," however defined.

The Water Ordinance as applied to the respondents conflicts with the general law and relates to matters which are of state-wide rather than local concern. Section 23 of article XII of the California Constitution provides in part that the Railroad Commission (now the Public Utilities Commission) "shall have and exercise such power and jurisdiction to supervise and regulate public utilities . . . or services rendered by public utilities as shall be conferred upon it by the Legislature, and the right of the Legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution. From and after the passage by the Legislature of laws conferring powers upon the Railroad Commission respecting public utilities, all powers respecting such public utilities vested in boards of supervisors . . . or other governing bodies of the several counties . . . shall cease so far as such powers shall conflict with the powers so conferred upon the Railroad Commission; provided, however, that this section shall not affect such powers of control over

---

[18]*In re Hubbard, supra,* 62 Cal.2d 119, 123-126.

[19]*In re Lane, supra,* 58 Cal.2d 99.

public utilities as relate to the making and enforcement of local, police, sanitary and other regulations . . . vested in any city and county or incorporated city or town as, at an election . . . , a majority of the qualified electors . . . shall vote to retain. . . ."[20]

Pursuant to section 23 of article XII the Legislature adopted the Public Utilities Act, in which it delegated to the Public Utilities Commission the power to "supervise and regulate every public utility in the State and [to] do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (Pub. Util. Code, § 701.) Article III of division 1 of the Public Utilities Act (Pub. Util. Code, §§ 761-773) contains detailed provisions relating to the equipment and facilities of public utilities:

Section 761 requires the commission to "fix the rules, practices, equipment, appliances, facilities, service, or methods to be observed, furnished, constructed, enforced, or employed. The commission shall prescribe rules for the performance of any service or the furnishing of any commodity of the character furnished or supplied by any public utility, and, on proper demand and tender of rates, such public utility shall furnish such commodity or render such service within the time and upon the conditions provided in such rules."

Section 762 requires the commission to issue orders for such extensions, repairs, improvements or changes in the "existing plant, equipment, apparatus, facilities, or other physical property of any public utility" as the commission finds ought reasonably to be made "to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities."

Section 768 empowers the commission to promulgate orders to require every public utility to "construct, maintain, and operate its line, plant, system, equipment . . . and premises in such manner as to promote and safeguard the health and safety of its employees . . . customers, and the public . . . and require the performance of any other act which the health or safety of its employees . . . customers or the public may demand."

---

[20]The proviso last quoted applies solely to certain freeholders' charter cities. (*Pacific Tel. & Tel. Co.* v. *City of Los Angeles* (1955) 44 Cal.2d 272, 281 [282 P.2d 36]; *City of San Mateo* v. *Railroad Com.* (1937) 9 Cal.2d 1, 7 [68 P.2d 713].)

Section 770 gives the commission power to ascertain and fix standards, regulations, practices, or service to be furnished, imposed, observed, and followed by all utilities furnishing water.

Section 1001 provides that no water corporation shall begin the construction of a water system or any extension thereof "without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction."

The commission has promulgated rules governing water service, including standards for design and construction, as for example, General Order No. 103, adopted June 12, 1956, containing comprehensive specifications for water systems and facilities. Section III of General Order No. 103, following a recitation that the system "shall be adequate to deliver the water requirements of all customers," provides for minimum pipe sizes and minimum pressures and provides "specifications, location, installation, and the responsibility for the maintenance of fire hydrants, public and private fire protection facilities, connecting mains, and their ownership may be subject to negotiation between the utility and the applicant. Fire hydrants and public and private fire protection facilities shall be installed to the requirements of the utility and when owned by the utility shall be subject to such conditions as the Commission may determine based upon the compensation received for this service." The same section of General Order No. 103 further provides: "The quantity of water delivered to the distribution system from all source facilities should be sufficient to supply adequately, dependably and safely the total requirements of all customers under maximum consumption, and should be determined so as to maintain the specified pressures as required by paragraph II 3 a."

No profound exegesis of the contents of the Water Ordinance and the utilities manual and of the contents of the cited sections of the Public Utilities Code and the commission's regulations promulgated pursuant thereto is necessary to conclude that the Water Ordinance as applied to respondents conflicts with general law. Although the wording of both sets of legislation is not identical, the subject matter which is covered by each is substantially identical.

Moreover, the construction, design, operation and maintenance of public water utilities is a matter of state-wide concern. Of course, the county is vitally interested in the

adequacy of the water supply available for fire protection. But the interest is not so parochial. All of the citizens of the complex of communities within the County of Los Angeles and in the neighboring counties are affected by the adequacy of water supply, not only for fire protection but also for other domestic and industrial uses. Under such circumstances, the control of these aspects of water utilities is not a municipal affair subject to a checkerboard of regulations by local governments. " 'Neither the public nor the service corporation could tolerate as many standards and policies as there were towns, cities, or boroughs through which they operated . . . [R]egulations not exclusively local, those affecting the [public utilities] business as a whole, or affecting the public as a whole, and those which the nature of the business and the character of the regulation require should be under the single agency of the state, are by our act committed to the exclusive jurisdiction of the Public Utilities Commission. The subject matter of this ordinance clearly falls within the exclusive jurisdiction of the commission.' "[21] (*Los Angeles Ry. Corp.* v. *Los Angeles* (1940) 16 Cal.2d 779, 787 [108 P.2d 430].)

We find no basis for distinguishing section 153 of the Water Ordinance from the remainder of the Water Ordinance as it applies to respondents. Section 153 of the Water Ordinance states in pertinent part: "A water utility . . . shall supply to the applicant for a building permit the certificate, if any, required by Section 307 of said Ordinance No. 2225, the Building Code, if the facts are such that such water utility . . . truthfully can execute such a certificate." Section 307 of the Building Code Ordinance, which is incorporated into section 153 of the Water Ordinance, states in part: "Except as otherwise provided by this section, every application for a building permit shall be accompanied by: (a) A certificate from a water utility that it can supply water to the proposed structure in compliance with Ordinance No. 7834, entitled 'Water Ordinance,' adopted August 2, 1960, . . ." ▮ Respondents cannot be required to issue a certificate that they

[21]*Lewis* v. *People's Water Co.* (1913) 3 C.R.C. 416, and *City of Alameda* v. *People's Water Co.* (1916) 9 C.R.C. 234, cited by appellants for the principle that the Public Utilities Commission does not have jurisdiction to regulate the design and size of water utility equipment for the purpose of fire protection, are not in point. The commission recognized its jurisdiction of the subject matter, but declined to require extension of mains for fire protection purposes when the utility had no duty to supply water to the applicants for fire protection. (*City of San Leandro* v. *Railroad Com.* (1920) 183 Cal. 229, 234 [191 P. 1].)

will supply water to the proposed structure "in compliance with . . . [the] 'Water Ordinance' " because the ordinance cannot be constitutionally applied to them. The purpose of section 153 is to coerce a water utility which has the ability to conform to the Water Ordinance to supply the certificate. The condition that the water utility need not supply the certificate "if the facts are such" that the water utility cannot truthfully execute the certificate was not intended to excuse a utility from furnishing a certificate simply because it is not disposed to submit to the requirements of the Water Ordinance. As used in the proviso, the word "facts" relates to the ability of the utility to furnish water in conformance with the Water Ordinance; a utility cannot "truthfully" say that such "facts" do not exist if it has that ability, even though it has no intention of complying with the Water Ordinance. To read section 153 as leaving it up to the utility to execute the certificate or not, depending upon its disposition voluntarily to comply with the ordinance is to read the section right out of the ordinance.

We assume for the purposes of this opinion that the Water Ordinance can be properly applied to building permit applicants. We hold only that the Water Ordinance cannot be constitutionally applied to the respondents.

### Issuance of Injunction Improper

The issuance of an injunction to restrain enforcement of an ordinance declared unconstitutional is not invariably appropriate. An ancillary injunction should not issue as a concomitant to a declaratory judgment unless the pleading and proof demonstrate that the traditional requisites of injunctive relief have been met. When the plaintiff has failed to prove any facts which would entitle him to any affirmative relief beyond a declaration of his rights, the issuance of an injunction is error. (*City of San Diego* v. *Cuyamaca Water Co.* (1930) 209 Cal. 105, 150-151 [287 P. 475]; *Sunset Scavenger Corp.* v. *Oddou* (1936) 11 Cal.App.2d 92, 97 [53 P.2d 188].)

Nothing in the record indicates that respondents have any need for an ancillary injunction. There is no reason to suppose that either the county or the county engineer is in the least disposed to enforce the Water Ordinance against the respondents in the teeth of a declaration of its unconstitutionality as applied to them. No affirmative act is required of the appellants fully to effectuate the declaration.

Accordingly, the judgment is modified by striking the provision therefrom enjoining appellants from enforcing the Water Ordinance against respondents.[22] In all other respects the judgment is affirmed.

Respondents shall recover their costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

[22]"2. That defendants are restrained and enjoined from enforcing Ordinance No. 7834 of the County of Los Angeles against plaintiffs, California Water & Telephone Company, Diamond Bar Water Company, Dominguez Water Corporation, East Pasadena Water Co., Palos Verdes Water Company, San Gabriel Valley Water Company, Southern California Water Company, Southwest Water Company, Suburban Water Systems, and Vallecito Water Company, and all other public utilities in the County of Los Angeles similarly situated."