[Civ. Nos. 32155, 32197.    Second Dist., Div. One.    Aug. 21, 1968.]

EUGENE HOLDEN et al., Plaintiffs and Appellants, v. ROGER ARNEBERGH, as City Attorney, etc., et al., Defendants and Respondents.

(Consolidated Cases.)

Marks & Schneider, Burton Marks and Harvey A. Schneider for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, in pro. per., John A. Daley, Assistant City Attorney, George J. Franscell and William B. Burge, Deputy City Attorneys, Harold W. Kennedy, County Counsel, Martin E. Weekes, Deputy County Counsel, Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Defendants and Respondents.

LILLIE, J.—Having been arrested and charged with violating section 311.2, Penal Code (exhibiting and selling obscene material), plaintiffs by their second amended complaint. first cause of action, sought a declaratory judgment that the statute as applied by the real parties in interest deprives them of rights guaranteed by the First, Fourth and Fourteenth Amendments, United States Constitution, and that real parties be required to set up a pre-arrest censorship system by which they (plaintiffs) could submit the material in question for a determination as to its asserted obscenity prior to seizure and prior to their arrest; and in their second cause of action, a further declaration that the various materials (books, magazines and photos) are not obscene as a matter of law and, therefore, not the subject of criminal prosecution, and injunctive relief against further prosecution for selling and exhibiting such books and photos. Demurrers having been sustained, plaintiffs appeal (No. 32155) from order dismissing the action (Code Civ. Proc., § 581, subd. 3). They also appeal (No. 32197) from order denying their motion to strike cost bill of certain real parties fixed in the sum of $550 pursuant to section 951, subdivision (b), Government Code.[1]

The first cause of action purports to set forth the existence of a controversy between plaintiffs and the several real

---

[1] "If judgment is rendered for the public employee . . . in any action where a public entity is not a party to the action but undertakes to provide for the defense of the action, allowable costs incurred in defending the action, but in no event less than fifty dollars ($50), shall be awarded against each plaintiff."

parties. Plaintiffs allege among other things[2] that they are in the book-selling business; that in September 1966 all were arrested for violating section 311.2, Penal Code, and one month later certain of them were again arrested; that prior to arrest and seizure of any items offered for sale by them, real parties were required as a matter of procedural due process to give notice and warning that such items have either been declared obscene within the meaning of section 311, Penal Code, by certain sections or divisions set up in the offices of the several real parties for such determinations, or submitted for judicial scrutiny by an appropriate court; that instead, real parties resort to the following procedures: A policeman or deputy sheriff enters plaintiffs' place of business, buys a book he thinks is obscene, takes the item thus purchased either to a deputy city attorney or deputy district attorney who, with or without consulting another deputy, thereupon determines whether the material is "prosecutable." A complaint is then drawn up for issuance by the applicable municipal court without first submitting the material to the magistrate; in the alternative, the policeman or deputy sheriff is directed to return to plaintiffs' place of business and make an arrest, without a warrant, upon the premise that the officer can then reasonably believe that a misdemeanor is being committed in his presence. An arrest is then made, either without a warrant or pursuant to a warrant issued by the municipal court; thereafter a search of the premises is made, and items considered incriminating are seized. Since the above procedures were applied to them, plaintiffs contend, and real parties deny, that section 311.2, Penal Code, as thus enforced violates their rights guaranteed by the First (freedom of speech), Fourth (freedom from unreasonable searches and seizures) and Fourteenth (equal protection of the laws) Amendments.

The second cause of action makes reference to the arrests of plaintiffs and appropriately identifies the various items charged to be obscene; it then alleges that a dispute has arisen as to the obscenity of these items and as to their (plaintiffs') right to protection from prosecution under the First Amendment. It is further alleged that a judicial determination should be made of their nonobscenity, after viewing the several films and reading the subject books, following which an

---

[2]In many respects they are patterned after the pleading in *Schackman* v. *Arnebergh* (1966) 258 F.Supp. 983, wherein the court denied petitioners any relief and dismissed the action as to all law enforcement officers concerned.

injunction should issue barring further prosecution of plaintiffs by the real parties for exhibiting and selling said materials.

Citing *Flack* v. *Municipal Court*, 66 Cal.2d 981 [59 Cal. Rptr. 872, 429 P.2d 192], it is first contended that plaintiffs' first cause of action sufficiently stated a cause of action for the relief therein sought insofar as it alleged that the concerned officers were required to obtain warrants prior to any arrests and seizures. As to the second cause of action, appellants, relying on *Zeitlin* v. *Arnebergh*, 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707], claim that the demurrer should not have been sustained because it is now settled that an action for declaratory judgment will lie to determine the alleged obscenity of a book or other material[3] under the applicable statutes. Based on the following, it is our view that here there is substance to neither contention.

In *Flack* petitioners were arrested by police officers after the latter had viewed a certain film exhibited at a theater owned by Flack who employed the other petitioner (Stephenson); contemporaneous with the arrests, the film was seized. Neither search nor arrest warrants had previously been secured. The next day each was charged with violating section 311.2, to which count of the complaint a demurrer was thereafter overruled. Motions to suppress and for return of the film were subsequently denied, after which petitioners sought mandamus requiring return of the film. It was concluded that "the procedures employed in the present matter do violence to those [First Amendment] constitutional protections," (p. 983) and the trial court was accordingly directed to issue the writ as prayed. What were the procedures employed in *Flack?* The arrests and seizures were made without a search warrant, although the film had been exhibited at the same public theater for two weeks, and they were effected by "police officers in the field" who made an *ad hoc* determination of obscenity contrary to the following *caveat* found in the opinion: "Within the precinct of the First Amendment, only the requirement that a search warrant be obtained prior to any search or seizure assures a free society that the sensitive determination of obscenity will be made judicially and not *ad hoc* by police officers in the field." (P. 992.) Although disapproving contrary conclusions on this point found in cases

---

[3]Films may also be included within the free speech and free press guaranty of the First and Fourteenth Amendments. (*Joseph Burstyn, Inc.* v. *Wilson,* 343 U.S. 495 [96 L.Ed. 1098, 72 S.Ct. 777].)

cited in the footnote (fn. 12), in a subsequent footnote (fn. 13) the court expressly declined under the facts there presented to "ascertain whether it is feasible for the magistrate to examine the allegedly offending film or hold an adversary proceeding prior to issuing a warrant. . . ." (P. 993.)

More pertinent to the problem at bar is the following from *Aday* v. *Municipal Court*, 210 Cal.App.2d 229 [26 Cal. Rptr. 576] (which case is cited with approval in *Flack*) : "As applied to the facts in hand, the *Marcus* ruling[4] requires a holding that the seizure must be followed expeditiously with a court hearing, if desired by the owners, and a prompt determination of whether the property or some specified portion of it shall be returned to the persons from whom seized." (P. 248.) Under California law such relief is made available to persons thus aggrieved by the provisions of sections 1539 and 1540, Penal Code, the purpose of which "is to provide one whose property is seized with a speedy remedy in a readily accessible court, . . ." (*Aday* v. *Superior Court*, 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47] ) ; too, it is immaterial whether the property was illegally seized by means of an invalid warrant or without any warrant at all. (*People* v. *Gershenhorn*, 225 Cal.App.2d 122 [37 Cal.Rptr. 176].) In the present case, as disclosed by their complaint, although plaintiffs were first arrested (and their property seized) on September 21, 1966, the instant action was not commenced until November 14 of that year, and the pleading is completely silent respecting resort to the available procedures, referred to above, which could have furnished redress in the manner provided by the applicable statutes ; and even if the motion to return and/or suppress had been denied, such order could have been more expeditiously reviewed (as was done in (*Flack*) by a proceeding in mandamus to compel the result desired.

Having sought declaratory relief, plaintiffs are now confronted with the recognized principle that the granting of such relief rests in the sound discretion of the court. (*People* v. *Ray*, 181 Cal.App.2d 64, 67 [5 Cal.Rptr. 113].) *Ray* holds (citing authority) that the court does not abuse its discretion in refusing to entertain that type of action where otherwise plaintiff has a speedy and adequate remedy. Both *Flack* and the two *Aday* cases have described the procedures to which plaintiffs have not resorted as "speedy" and "expeditious"

[4] *Marcus* v. *Property Search Warrant*, 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708].

means of redress; under the circumstances, we do not believe that plaintiffs have made any showing that the present proceeding should be considered an exception to the general rule above stated.

We apply the same rationale to plaintiffs' second contention that under the ruling in *Zeitlin* v. *Arnebergh,* 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707], they are entitled under the second cause of action as pleaded to a judicial determination respecting the obscenity of the items seized and to an injunction prohibiting further prosecution of the criminal proceedings therein referred to. Thus, insofar as that course of action seeks a declaratory judgment, a timely (and successful) motion to suppress might well have removed the several materials from judicial consideration, thus ending the People's case. With regard to injunctive as well as declaratory relief, real parties have cited *Manchel* v. *County of Los Angeles,* 245 Cal.App.2d 501 [54 Cal.Rptr. 53], which did not, as here, involve a challenge to the unconstitutional application of a legislative enactment. ■ With respect to the issuance of an injunction, the correct rule is stated in *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405, 407-408 [65 P.2d 884, 109 A.L.R. 895] : " 'It is settled that where a penal statute causes irreparable damage to property rights, the injured party may attack its constitutionality by an action to enjoin its enforcement. Hence, if the ordinance is unconstitutional in its application to these plaintiffs, they are entitled to the decree which they seek.' " ■ However, real parties correctly contend that the same principle governs actions for injunctive relief as is applicable in proceedings for a declaratory judgment, namely, there must be some showing of the inadequacy of a remedy at law affording proper grounds for the equitable relief sought. In *North Side etc. Assn.* v. *Hillside etc. Park,* 70 Cal.App.2d 609 [161 P.2d 618], affirming a judgment on the pleadings, this court declared: ". . . it is a well-recognized doctrine that where a party has an adequate remedy at law he may not resort to a court of equity for injunctive relief [citations]." (P. 615.)

■ In the second appeal (No. 32197), plaintiffs challenge the order below refusing to strike the cost bill of certain real parties upon the ground that the subject statute (fn. 1, *supra*) in practical effect imposes a penalty upon them for filing their lawsuit and, therefore, is violative of the Fourteenth Amendment. They rely on *Giaccio* v. *Pennsylvania,* 382 U.S. 399 [15 L.Ed.2d 447, 86 S.Ct. 518], wherein, upon the ground of vagueness, the court struck down a statute provid-

ing that in a criminal case the jury could decide, upon defendant's acquittal, the proportionate costs (if any) to be borne by him. The trial court had instructed the jury that it could place costs of prosecution on defendant, even if acquitted of the charge, if it found that he had been guilty of " 'misconduct of some kind as a result of which he should be required to pay some penalty short of conviction. . . .' " (P. 404 [15 L.Ed.2d p. 450].) That the decision was based upon the lack of any ascertainable standards definitive of the type of misconduct in suit, there can be no doubt. The California statute, of course, is otherwise, providing that costs of not less than $50 per plaintiff be borne in the event his suit is not successful. Further, it has been held that former section 647, Government Code, similar in part to the statute under consideration, was not open to the constitutional challenge here asserted (*Reid* v. *State of California*, 193 Cal.App.2d 799, 806 [14 Cal.Rptr. 597]) ; too, since *Reid* was one for an injunction, it also answers the additional point that the instant lawsuit, being equitable in nature, is not an "action" within the meaning of section 951.

The orders are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 3, 1968, and appellants' petition for a hearing by the Supreme Court was denied October 17, 1968. Peters, J., was of the opinion that the petition should be granted.