[Crim. No. 7959. First Dist., Div. One. Aug. 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ALEX DE RENZY, Defendant and Appellant.

---

C. Ray Robinson and Carter Jay Stroud for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—This case concerns the legality of the seizure of two reels of allegedly obscene motion picture film, pursuant to the instructions of a search warrant. The pictorial content of each reel differed from the other. At the time of the seizure, their owner, defendant and appellant de Renzy, was arrested on a warrant and charged with possession of the film "with intent to . . . exhibit" the same. (Pen. Code, § 311.2.) A special proceeding taken under Penal Code section 1538.5 in the municipal court for return of the film resulted unfavorably to de Renzy who appealed the decision to the superior court. That court affirmed the order of the lower court without opinion, but on motion of de Denzy it certified, under rule 63, California Rules of Court, that a transfer of the case "to the Court of Appeal appears necessary to secure uniformity of decision and to settle an important question of law, namely, whether the decision of the United States 7th Circuit Court of Appeal in *Metzger* v. *Pearcy* (1968) 393 F.2d 202 states the law applicable in California."

■ In the municipal court special proceeding a question was raised, and a conflict appeared, whether the film was seized as an incident to de Renzy's arrest, or pursuant to the search warrant. If the former, under the instant facts, the seizure would have been invalid. (See *Flack* v. *Municipal Court,* 66 Cal.2d 981, 991 [59 Cal.Rptr. 872, 429 P.2d 192].) The arresting officer testified that he told de Renzy "I was going to take the film that I had a warrant for." At least in the absence of a request therefor, it was not essential to exhibit the search warrant. (See *People* v. *Miller,* 193 Cal. App.2d 838, 841 [14 Cal.Rptr. 704]; *People* v. *Stewart,* 189 Cal.App.2d 176, 179-180 [10 Cal.Rptr. 879].) There was thus substantial evidence in support of the municipal court's resolution of the point against de Renzy; and properly, no such issue is raised in this court.

Nor is any issue here raised as to whether the subject film was in fact obscene. The only question presented is whether, even under an otherwise valid search warrant, such matter may be seized without a prior determination of obscenity at an adversary judicial proceeding.

de Renzy construes *Metzger* v. *Pearcy, supra,* 393 F.2d 202, to assert as an absolute rule that there may be no seizure of matter, although established by oath or affirmation to the satisfaction of a magistrate as probably obscene, without a prior adversary judicial proceeding. He urges that we follow this interpretation of *Metzger.* ■ Of course, although such a decision of a United States Court of Appeals is entitled to great respect, we are not bound thereby, even on questions relating to the federal Constitution. (*People* v. *Willard,* 238 Cal.App.2d 292, 305 [47 Cal.Rptr. 734].)

We first discuss some of the fundamental considerations relating to the question presented to us.

■ Obscenity, in whatever form, is wholly unprotected by the free speech guaranty of the First Amendment. (See *Roth* v. *United States,* 354 U.S. 476, 484-485 [1 L.Ed.2d 1498, 1506-1507, 77 S.Ct. 1304].) The several states are free to regulate and suppress such matter by virtue of their constitutionally reserved police power. (*Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 986.) And courts will not hesitate to enforce any valid law against obscenity. (See *Jacobellis* v. *Ohio,* 378 U.S. 184, 202 [12 L.Ed.2d 793, 806, 84 S.Ct. 1676].)

■ Nevertheless, we must recognize that a "dim and uncertain line" often separates obscenity from constitutionally pro-

tected expression (*Bantam Books, Inc.* v. *Sullivan,* 372 U.S. 58, 66 [9 L.Ed.2d 584, 590, 83 S.Ct. 631]) ; for this reason the ordinary rules of search and seizure are inapplicable. (*Flack* v. *Municipal Court, supra,* p. 989.) For purposes of search and seizure, allegedly obscene material may not be treated as narcotics, burglar tools or other contraband. (*Marcus* v. *Search Warrant,* 367 U.S. 717, 730-731 [6 L.Ed.2d 1127, 1135-1136, 81 S.Ct. 1708].) Nor, as we have indicated, absent an emergency involving a high probability that evidence may be lost, destroyed or spirited away, may such matter be seized as an incident to a lawful arrest. (*Flack* v. *Municipal Court, supra,* pp. 990-992.) It seems to follow, although great care must be taken to fully preserve First and Fourth Amendment rights, we must nevertheless not interpret those amendments in such a manner as to deny to California the power to enforce its obscenity laws. Any construction of a constitutionally granted right which *prevents* the enforcement of a constitutionally enacted criminal statute is itself a constitutional impairment.

If the rule argued for by de Renzy be the law, then California's law enforcement authorities, under circumstances as here exist, are faced with a curious dilemma. They are permitted by the state and federal Constitutions, and directed by statute, to enforce the state's obscenity laws. On the other hand they may not seize alleged obscene material, even under a search warrant, without a prior adversary proceeding. Any court process designed to compel production of the questioned material would obviously impinge upon the possessor's Fifth Amendment rights. (See *Boyd* v. *United States,* 116 U.S. 616, 634-635 [29 L.Ed. 746, 752-753, 65 S.Ct. 524].) Thus, although seizure of obscene material is conditioned upon a prior adversary hearing, the state would be without power to produce the evidence essential to that hearing. This result is unreasonable and should be avoided. We recognize that there may be circumstances where, by fortuity, obscene matter may be produced by the state without need of search or seizure or court process, e.g., books offered for public sale. In such cases any seizure without prior adversary proceedings obviously would be constitutionally impermissible. But we do not believe that enforcement of a vital state criminal statute must necessarily rest upon some chance windfall of evidence.

*Metzger* v. *Pearcy, supra,* 393 F.2d 202, is, as we have seen, the case relied upon by de Renzy and the basis of the superior court's certification of his appeal to this court.

In *Metzger, four prints* of an allegedly obscene motion picture were seized by officers, apparently without a search warrant as an incident to an arrest. The federal Court of Appeals affirmed a lower court order directing return of the film. The court properly held that motion pictures were subject to the same First Amendment guarantees as any other form of expression. (Accord: *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 988-989.) Feeling that they were bound by *A Quantity of Books* v. *Kansas* (1964) 378 U.S. 205 [12 L.Ed.2d 809, 84 S.Ct. 1723] (*Books*), the court said (393 F.2d at p. 204): "The lesson of *Books* is that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity."

A study of *Books, supra,* 378 U.S. 205, relied upon in *Metzger* reveals the following. The Attorney General of Kansas obtained, on an ex parte application, a court order authorizing the seizure of *all copies* of 57 named books to be found at a certain place of business. More than 1,700 books were thereupon seized and impounded. Four of the nine justices of the court expressed the view (p. 210 [12 L.Ed.2d at p. 812]), "that since the warrant here authorized the sheriff to seize *all copies* of the specified titles, and since [the owner] was not afforded a hearing on the question of the obscenity even of the seven novels [copies of which had previously been submitted to the lower court] before the warrant issued, the procedure was likewise constitutionally deficient." (Italics added.) The justices emphasized that all of the named books found were seized, saying: "A seizure of *all copies* of the named titles is indeed more repressive than an injunction preventing further sale of the books." (Italics added.)

The four justices of *Books* relied heavily on *Marcus* v. *Search Warrant* (1961) 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708]. In that case a search warrant directed any peace officer to seize "obscene material" found on certain designated premises. Acting on the warrant, officers seized 11,000 copies of 280 publications. The *Marcus* court found the seizure order to be violative of the First Amendment. In doing so the court stated (p. 738 [6 L.Ed.2d at p. 1139]): "*Mass seizure* in the fashion of this case was thus effected without any safeguards to protect legitimate expression." (Italics added.) Here again great stress was placed upon the fact that *all copies* of each publication were taken under the warrant. We find this language (pp. 736-737 [6 L.Ed.2d at pp. 1138-1139]): ". . . there is no doubt that an effective restraint—

indeed the most effective restraint possible—was imposed prior to hearing on the circulation of the publications in this case, because all copies on which the [sheriff] could lay [his] hands were physically removed . . . from the premises of the wholesale distributor. An opportunity . . . to circulate the [books] . . . and then raise the claim of nonobscenity by way of defense to a prosecution for doing so was never afforded these appellants because the copies they possessed were taken away. Their ability to circulate their publications was left to the chance of securing other copies, themselves subject to mass seizure under other such warrants. The public's opportunity to obtain the publications was thus determined by the distributor's readiness and ability to outwit the police by obtaining and selling other copies before they in turn could be seized. In addition to its unseemliness, we do not believe that this kind of enforced competition affords a reasonable likelihood that nonobscene publications, entitled to constitutional protection, will reach the public. A distributor may have every reason to believe that a publication is constitutionally protected and will be so held after judicial hearing, but his belief is unavailing as against the contrary [ex parte] judgment [pursuant to which the sheriff] seizes it from him."

Nothing is found in *Metzger, Books,* or *Marcus* that condemns a narrow, discriminating seizure, under a search warrant issued upon a reasonable finding of probable cause therefor by a magistrate, of so much obscene material as is reasonably necessary for a later adversary proceeding. Indeed, even in *Metzger* we find recognition of the need, and the right, of a state to obtain such amount of obscene material as is *necessary* for the adversary hearing. The appellate court pointed out (without discussion of the obvious Fifth Amendment problem involved) that after the trial court had ordered return of the improperly seized film, it nevertheless directed Metzger, upon the prosecutor's request, to surrender *one* print of the film "for his use in the trials of . . . the criminal cases involving such film now pending in the Municipal Court of Marion County, Indiana." (393 F.2d at p. 204.)

We hold that state law enforcement officers, acting under authority of a search warrant, may seize at least one copy of an alleged obscene book, film, or other material when necessary for use as evidence in a later adversary proceeding, without doing violence to the First or Fourth Amendment.

We believe this holding to be a reasonable accommodation of the constitutional right of California to enforce a constitutionally valid criminal statute to the demands of the federal

Bill of Rights. As required by *Books, supra,* 378 U.S. 205, 210 [12 L.Ed.2d 809, 812, 84 S.Ct. 1723], and *Marcus, supra,* 367 U.S. 717, 732 [6 L.Ed.2d 1127, 1136, 81 S.Ct. 1708], it is ''designed to focus searchingly on the question of obscenity,'' and it authorizes a restrictive procedure reasonably calculated to ''ensure against the curtailment of constitutionally protected expression.'' (See *Books,* p. 210 [12 L.Ed.2d at p. 812] ; *Bantam Books, Inc.* v. *Sullivan, supra,* 372 U.S. 58, 66 [9 L.Ed.2d 584, 590, 83 S.Ct. 631].)

Our remaining task is to apply the rule we have announced to the subject of this appeal. As we have pointed out, under authority of a search warrant, the officers seized two reels of film, each different from the other and each containing allegedly obscene matter. They took no more, and no less, than would be necessary to establish obscenity at a later adversary proceeding. Their action fell far short of the unnecessary, indiscriminate mass seizures denounced in *Metzger, Books,* and *Marcus.* The order of the municipal court denying de Renzy's motion for return of his film was therefore without error.

de Renzy's argument in the superior court, not emphasized here, that the police nevertheless conducted a mass seizure since they took both nonobscene and obscene material on the same reels, is obviously without merit. Any police attempt, at the place of seizure, to edit and cut hundreds, perhaps thousands, of feet of film without expertise or proper equipment, would be a far greater threat to constitutional and property rights, than was the conduct complained of here.

Two additional considerations generally relevant to the problem before us but not here at issue, should not go altogether unnoticed. First: California law affords a prompt and speedy remedy, including an adversary hearing, for the return of property improperly taken under a search warrant. See Penal Code sections 1538.5, 1539, 1540, the purpose of which ''is to provide one whose property is seized with a speedy remedy in a readily accessible court.'' (*Aday* v. *Superior Court,* 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47] ; *Holden* v. *Arnebergh,* 265 Cal.App.2d 87, 90 [71 Cal.Rptr. 401].) Secondly : de Renzy has mentioned, without particularly advocating, the sometimes suggestion that in the absence of an adversary hearing, a magistrate should at least view allegedly obscene film before authorizing a search warrant. No way has yet been pointed out how this is to be accomplished. Must the magistrate at the beck of a

policeman travel to the place of exhibition? If so, should the visit be clandestine or open? The former would be unfitting; a judge should not assume the role of an undercover investigator. If the magistrate makes his presence known, what reasonable assurance exists that the exhibitor will show the film, thus perhaps aiding in his own conviction. No means appears by which he may be compelled to bring his film to the magistrate. And even if such a viewing could be arranged before seizure of the film, there would still be no prior adversary hearing as demanded here by de Renzy, and required, *in proper cases,* by *Books, Marcus* and *Metzger.*

The order of the municipal court denying the motion of de Renzy for return of the subject moving picture film is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied August 12, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1969.