Charles E. **BAZZELL**, Jr. and William R. Irving

v.

Ben D. **GIBBENS** and Sargent Pitcher, Jr.

**EVE PRODUCTIONS, INC.**

v.

Ben D. **GIBBENS** and Sargent Pitcher, Jr.

**Civ. A. Nos. 69–167, 168.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 9, 1969.

Lawrence A. Durant, Mengis & Durant, Baton Rouge, La., for plaintiffs, Charles E. Bazzell, Jr. and William R. Irving and Eve Productions, Inc.

Frierson M. Graves, Jr., Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., for plaintiff, Eve Productions, Inc.

Sargent Pitcher, Jr., Ralph L. Roy, Baton Rouge, La., for defendants.

WEST, Chief Judge:

Plaintiffs bring these consolidated actions seeking (1) injunctive relief from the seizure of a motion picture film and from State prosecution for alleged violation of a State obscenity statute, (2) a declaratory judgment declaring the seizure of the film to be unlawful, and (3) a declaratory judgment declaring Sections 106(2) and 106(3) of Title 14 of the Louisiana Revised Statutes to be unconstitutional insofar as their application to the public exhibition of the film in question is concerned. The actions seek to redress alleged deprivation, under color of State law, of rights, privileges and immunities, and particularly the right of freedom of expression secured to plaintiffs by the First Amendment to the United States Constitution.

Jurisdiction is asserted under 28 U.S.C.A. §§ 1343(3), 1343(4), and 42 U.S.C.A. § 1983.

The pertinent parts of the State statute involved read as follows:

"§ 106. Obscenity

A. Obscenity is the intentional:

\* \* \* \* \* \*

(2) Production, sale, exhibition, gift, or advertisement with the intent to primarily appeal to the prurient interest of the average person, of any lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper, story paper, writing, phonograph record, picture, drawing, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of sexually indecent character which may or may not require mechanical or other means to be transmitted into auditory, visual or sensory representations of such sexually indecent character.

(3) Possession with the intent to sell, exhibit, give or advertise any of the pornographic material of the character as described in Paragraph (2) above, with the intent to primarily appeal to the prurient interest of the average person.

\* \* \*." LSA-R.S. 14:106.

The statute makes no provision for the seizure or destruction of the material alleged to be obscene. It merely makes "obscenity" a crime, defines the crime of "obscenity," and then provides for the penalty in terms of fine and imprisonment in case of violation. Seizures of evidence, such as the one made in this case, are not made pursuant to any license granted by the statute but instead are made pursuant to the laws of Louisiana pertaining to searches and seizures made with or without search warrants. The seizure made in the present case was made not pursuant to any provision of the statute in question but pursuant to a warrant duly issued upon a showing of probable cause.

The corporate complainant in Civil Action 69–168, Eve Productions, Inc., is the owner of all copies of a motion picture film entitled "Finders Keepers, Lovers Weepers." The individual complainants in Civil Action 69–167 are the owners and operators of the Regina Theater, Baton Rouge, Louisiana, at which theater "Finders Keepers, Lovers Weepers" was being shown to the public on July 22, 1969, and indeed had been shown at the same location for some weeks previous thereto. Individual defendants in both suits are, respectively, an investigator in the office of the District Attorney, East Baton Rouge Parish, Louisiana, and the District Attorney for the same Parish.

On July 22, 1969, the individual plaintiffs were arrested by defendant, Ben D. Gibbens, and charged with violating Louisiana's obscenity statute, LSA-R.S. 14:106, by unlawfully exhibiting a "lewd, lascivious, filthy and sexually indecent motion picture film with the intent to primarily appeal to the prurient interest of the average person." Coincidentally with plaintiffs' arrest, and pursuant to a search warrant signed by the Honorable John S. Covington, Judge, Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, defendants seized complainants' copy of "Finders Keepers, Lovers Weep-

ers." The arrest and search warrant were dated July 22, 1969, but plaintiffs allege, and defendants admit, that whether or not the film was obscene as defined by the pertinent Louisiana statute had not been determined in an adversary hearing prior to its seizure. The State Judge's issuance of the warrant was in accordance with Louisiana law, based upon defendant Gibbens' affidavit alleging that he had probable cause to believe that plaintiffs had violated the obscenity statute.

All of the relief here sought by the plaintiffs revolves not around the question of whether or not the film in question is, in fact, obscene, but rather around the seizure of the film. We have for decision only the narrow question of whether or not the Constitution of the United States compels, in all cases, an adversary hearing on the question of obscenity prior to seizure of the thing alleged by the State to be obscene. We answer that question in the negative. Under the particular circumstances of this case, it is the opinion of this Court that the film in question was properly seized and held as evidence to be used in the criminal prosecution which the State expects to follow. It is well settled that neither motion pictures nor any other mode of expression may rely on the First and Fourteenth Amendments to justify and protect a public display of properly defined obscenity from permissible federal or state regulation. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Thus, if the State statute which these plaintiffs have been charged with violating is not itself constitutionally defective, neither the First nor the Fourteenth Amendment constitutes any obstacle to the further prosecution of the criminal charges brought pursuant thereto. The question before us now is not whether the plaintiffs can be prosecuted under that statute but whether or not the State, through its District Attorney, had a right to seize the film in question prior to holding an adversary hearing on the question of its obscenity. The Court is not unmindful of the decision in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S. Ct. 1723, 12 L.Ed.2d 809 (1964), wherein the United States Supreme Court held that the seizure there involved did violence to the First Amendment and that thus, in the absence of a pre-seizure adversary hearing, the seizure in that particular case was constitutionally impermissible. This Court is also cognizant of the fact that the Fourth and Seventh Circuit Courts of Appeal in Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (CA 4–1969), and Metzger v. Pearcy, 393 F.2d 202 (CA 7–1968), saw fit in those particular cases to conclude that the decision in A Quantity of Books was controlling. I do not so find in the present case. I find nothing in the case law to indicate that in every case where a seizure of alleged obscene material is to be made, a pre-seizure adversary hearing is constitutionally required. Whether or not such a hearing is required must depend upon the nature and purpose of the seizure. If the seizure is made for the purpose of destroying the thing seized and for the purpose of preventing the dissemination of the material involved, then A Quantity of Books teaches that an adversary hearing prior to the seizure and/or destruction of the material is required in order not to fun afoul of the First Amendment guarantee to the right of freedom of expression. But where, as here, a single copy of a film is seized for the sole purpose of preserving it as evidence to be used in a criminal action to be brought pursuant to a State statute already held, in all respects pertinent hereto, to be constitutional on its face, Delta Book Distributors v. Cronvich, 304 F.Supp. 662 (E.D. La.—1969), such a seizure cannot be said to be violative of the First Amendment's guarantees albeit a side effect of such a seizure coincidentally prevents that one particular copy of the film from being further disseminated pending the outcome of the criminal proceedings. Unlike the situation in A Quantity of Books, the seizure made

here was not made for the purpose of preventing the dissemination of the information contained in the film. The seizure here was not made for the purpose of destroying the film. On the contrary, it was made in order to preserve the film and to use it in proceedings to decide whether or not its dissemination by these plaintiffs, or by anyone else, does in fact violate the Louisiana obscenity statute. To deprive the District Attorney or the State of Louisiana of the right to seize evidence pursuant to a search warrant issued on the basis of probable cause, and to preserve that evidence intact for use during future criminal proceedings, would be to effectively deny the State the right in a case such as this to prosecute at all under a statute already declared to be constitutional. In the case of *A Quantity of Books*, the State did not seize one book or even one of several different books to be used as evidence. Instead it seized 1,715 copies of 31 books, and then, after a hearing, the Court ordered all copies destroyed. It is extremely doubtful that the United States Supreme Court would have considered this seizure illegal had the State merely seized one copy of the books in question to be preserved as evidence, while allowing the defendant to continue disseminating the remainder of the material pending trial. Surely such a procedure would not have offended the First Amendment right to freedom of expression. It would merely have prevented the possible destruction or disappearance of the evidence upon which the State must necessarily rely for its criminal prosecution.

In *A Quantity of Books*, supra, the warrant authorized the Sheriff to seize *all copies* of the specified books. In Marcus v. Search Warrants of Property, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1961), wherein the Supreme Court held that the procedures used pertaining to seizures were unconstitutional, the officers seized all magazines which in their judgment were obscene. When an officer thought a magazine ought to be picked up, he seized *all* cop-

ies of it. Approximately 11,000 copies of 280 publications were seized. In the recent case of Delta Book Distributors, Inc., et al. v. Cronvich, et al., supra, a divided Three Judge District Court held that the seizure, without prior adversary hearing, of a quantity of publications was violative of the First and Fourteenth Amendments. But in that case copies of the questioned publications were first purchased by the enforcement officers prior to the arrests, and then, when the arrests were made, *all available copies* of each of the questioned publications were seized without prior adversary hearing. Obviously the State had its evidence when the officers purchased copies of the books prior to the arrests, and thus the subsequent seizure of remaining copies could only have been for the purpose of preventing further dissemination of the books. Such is not the case in the matter here under consideration. It is true that the seizure of the film here would prevent that particular film from being shown by the plaintiffs, Charles E. Bazzell, Jr. and William R. Irving for as long as it remained in the custody of the State officials, but that is merely a collateral effect of the seizure necessary to the criminal prosecution to follow. The seizure was made according to law, pursuant to a search warrant apparently issued upon a proper showing of probable cause. The other plaintiff herein, Eve Productions, Inc., was the owner of other copies of the same film, none of which the authorities attempted to seize. That plaintiff has in no way been denied the right to continue showing its films, nor have the plaintiffs Bazzell and Irving been denied the right to retain possession of and to display any other copies of the film which they might have or acquire. They have only been denied possession of evidence legally seized by the State pursuant to a warrant legally issued in connection with a criminal charge brought against them pursuant to a State statute which has not thus far been held to be unconstitutional. The State could not purchase a copy of the

film to be used as evidence as it could in the case of most printed publications. It is absolutely necessary for the State to have a copy of the film in order to properly enforce the statute involved. How else but by seizure could it obtain this indispensable evidence? In the case of Tyrone v. Wilkinson, supra, and in the case of Metzger v. Pearcy, supra, the Courts found another way. They ordered the theater owner in each case to deliver one copy of the film to the prosecuting attorney so that it might be used in the preparation for trial and in the actual trial of the criminal case. Thus, at least in the Fourth and Seventh Circuits it has been recognized that the State does have a right to have possession of available evidence necessary to the preparation and trial of a criminal case under an obscenity statute. It would make no difference insofar as First Amendment rights are concerned whether the possession of such evidence is obtained by the State by virtue of a seizure made pursuant to a search warrant properly issued or by virtue of a court order directing the defendant to deliver the film to the State so that it might be used in preparation for trial. In either case the purpose of the possession of the film by the State is to preserve the minimum amount of evidence required to properly prepare the State's case rather than to prohibit the further dissemination of the information contained in the film prior to trial. As was stated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 1250, 22 L.Ed.2d 542 (1969), " * * * the State should retain broad powers to regulate obscenity; * * *." Included within that power is the power to seize, upon a showing of probable cause, or as an incident to a lawful arrest, such evidence as is available and necessary for the proper preparation and prosecution of charges brought pursuant to a valid obscenity statute. As long as the seizure is reasonably calculated to preserve only the evidence actually necessary to the pend-

ing prosecution, rather than to prevent the dissemination, prior to trial, of the content of the material seized, such a seizure does not offend First Amendment rights. The temporary diminution of a First Amendment right that might be occasioned by such a seizure cannot be said to reach the proportion of an unconstitutional denial of the right to freedom of expression protected by the First Amendment.

 Thus, it is the opinion of this Court that the seizure here involved was not an unconstitutional seizure. It is further the opinion of this Court that portions of the statute in question, i. e., Sections 106(2) and 106(3) of Title 14 of the Louisiana Revised Statutes, are neither unconstitutional on their face, nor have they been unconstitutionally applied to the plaintiffs herein. For these reasons, the relief sought herein by the plaintiffs will be denied, and this suit will be dismissed at plaintiffs' cost.

Judgment will be entered accordingly.