Richard W. **MERRITT**, Plaintiff,

v.

George **LEWIS**, John Price, Ronald Toch-
terman and the Honorable Robert
N. Zarick, Defendants.

Civ. No. S–1158.

United States District Court,
E. D. California.

Jan. 19, 1970.

See also D.C., 309 F.Supp. 1254.

Richard M. Grossberg, Sacramento,
Cal., for plaintiff.

Thomas C. Lynch, Atty. Gen., State of
Cal., Sacramento, Cal., for defendants.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

Plaintiff has brought an action under the Civil Rights Act (42 U.S.C. § 1983) to secure the return of a film and to enjoin future seizures of his films without a prior adversary hearing on the question of their obscenity. On June 27, 1969, this court filed a Memorandum and Order holding that the state procedure disclosed by this record did not violate the Constitution and dismissing the action. I granted plaintiff's motion for reconsideration under Federal Rule of Civil Procedure 60(b). I have considered the arguments and examined the additional briefs, and for reasons which follow I have concluded that the original Memorandum and Order filed in this case should be withdrawn.

Plaintiff's film entitled "The House Near the Prado" was seized pursuant to a warrant issued by a California municipal court judge. The judge issued the warrant after determining that there was probable cause to believe that the property was possessed "with the intent to use said property as means of committing a public offense." The District Attorney subsequently prosecuted plaintiff in state court for exhibiting obscene matter (Calif.Pen.Code § 311.2).

The film was seized on January 30, 1969. On February 10, 1969, the judge who issued the warrant viewed the film in the presence of plaintiff and his counsel. On March 7, 1969, the judge ruled on plaintiff's motion to suppress. The court ruled as follows:

> The court is of the opinion there was probable cause for the issuance of search warrant based upon affidavits; and is of the opinion the affidavit in support of search warrant is sufficient and the evidence properly seized; and in its opinion there is probable cause to believe the film "The House Near the Prado" to be obscene; it is ordered the motion to suppress evidence be and is hereby denied. Further ordered motion for pre-trial hearing on issue of obscenity be and is hereby denied and motions under section 1539 P.C. and 1540 P.C. are hereby denied.

The seizure of books and films by police even with the authority of a search warrant touches first amendment rights. See Marcus v. Search Warrants of Property etc., 367 U.S. 717, 730–731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Such seizures must be effected by procedures which "adequately safeguard against the suppression of nonobscene books [and films]." A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 208, 84 S.Ct. 1723, 1724, 12 L.Ed.2d 809 (1964). When such seizures are accomplished by methods not designed to adequately protect first amendment rights, the courts must strike them down. At the same time a court should not go to wholly unreasonable lengths in the name of protecting first amendment rights if society's right to the effective enforcement of its valid obscenity laws is thereby frustrated.

One pernicious tactic properly condemned by the courts is the mass seizure. See A Quantity of Copies of Books v. Kansas, supra; Marcus v. Search Warrants of Property etc., supra; United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967); Evergreen Review, Inc. v. Cahn, 230 F.Supp. 498 (E.D.N.Y.1964). In these cases single warrants authorized the seizure of thousands of copies of many different publications. Mass seizures are impermissible for two reasons. First, the issuing magistrate does not examine each item to be seized and make a separate finding as to its obscenity. Second, by seizing more than the one copy necessary for evidentiary purposes, the police act as prior censors for the community. The instant case presents neither problem. Only one copy

of one film was seized,[1] and the magistrate had an opportunity to pass on its probable obscenity before he issued the warrant.

The Supreme Court has indicated that the standard to be applied to seizures of books and films is different from that applied to ordinary contraband. *See* A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrants of Property etc., 367 U.S. 717, 730–731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). This is because the First Amendment has always occupied a preferred position in our constitutional system, and we wish to adequately safeguard against the seizure and suppression of non-obscene and therefore constitutionally protected books and films. In *A Quantity of Books* four justices ruled that the Fourteenth Amendment required an adversary proceeding prior to the seizure of books. In the most recent Supreme Court case to consider the question, Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), in a per curiam opinion the Court said:

> The admission of the films in evidence requires reversal of petitioner's conviction. A seizure of allegedly obscene books on the authority of a warrant 'issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered * * * obscene' was held to be an unconstitutional seizure in Marcus v. Search Warrants of Property at 104 East Tenth St., 367 U.S. 717, 731–732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 [1961]. It is true that a judge may read a copy of a book in courtroom or chambers but not as easily arrange to see a motion picture there. *However, we need not decide in this case*
> *whether the justice of the peace should have viewed the motion picture before issuing the warrant.* The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' id. at 732, 81 S.Ct. at 1716, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. (392 U.S. at 637, 88 S.Ct. at 2104) [emphasis added]

Defendants have argued that because there was no opinion of the Court in *A Quantity of Books*, it is entitled to little if any precedential value. It is clear from the italicized language in *Lee Art Theatre, supra,* that whatever precedential value *A Quantity of Books* may have, its pre-seizure adversary hearing requirement is not yet applicable to motion picture cases.

A study of the three Supreme Court cases cited above and their rationale convinces me that the standard of probable cause, applicable to other contraband, is insufficient in the case of books and films. The concept of probable cause has built into it a percentage of error which does not adequately protect first amendment rights. I have concluded that the issuing magistrate must find not merely that there is probable cause to believe that the film is obscene, but rather whether the film is or is not obscene.[2] That is equivalent to deciding whether or not the film is constitutionally protected. *See* Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Consequently, the seizure in this case cannot stand. Both before and after the seizure the court applied only the probable cause

---

1. There is nothing in this record to indicate that plaintiff would have been prevented from showing another print of the film if one had been available. The record does indicate that the seizure took place at the end of the film's run at the theatre.

2. As will be further explained below, the finding of obscenity need not be made before the warrant is issued.

standard to test the validity of the seizure. This was insufficient to "adequately safeguard against the suppression of nonobscene [films]." *A Quantity of Books, supra,* 378 U.S. at 208, 84 S.Ct. at 1724.

Since plaintiff seeks to enjoin future seizures of his films without an adversary hearing on their obscenity, a discussion of the procedures I consider adequate in these cases is appropriate. I am aware that two circuit courts have held that films may not be seized without a prior adversary hearing.[3] *See* Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). However, in both cases, at the same time the court ordered the seizures nullified, it ordered the exhibitor to make one print of the film in question available to the prosecutor "for the preparation and trial of the criminal cases."[4] The net effect on first amendment rights was thus identical to the result in the instant case where only one print was taken originally.[5]

Those decisions are not binding on me, and I join several other courts in declining to follow them. *See* 208 Cinema v. Vergari, 5 Cr.L. 2395 (S.D.N.Y. 1969); Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La.1969); People v. De Renzy, 275 A.C.A. 419, 79 Cal.Rptr. 777 (1969); *See also* Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y. 1969). The court in *Rage Books* balanced the competing considerations in these cases as follows:

It cannot be the law, free speech rights notwithstanding, that peddlers and purveyors of smut and despicable vulgarity have a constitutional license to publicly exploit pictures, magazines and books plainly exhibiting gross depravity, with complete immunity from on-the-spot arrest of the merchant and seizure of a reasonable quantity of the evidence on which to prosecute the arrest. It seems ludicrous to suggest that apprehension of suspected criminals and their unsavory wares requires adversary court proceedings to stamp the contents as probably obscene and to obtain authorization for an arrest and a seizure of the evidence supporting the arrest. While this sort of scene is being enacted, the sale and distribution of the material would not be in any jeopardy and the evidence could be consumed—probably at an accelerated rate under the impetus of publicity of obscenity proceedings in respect thereof. If the police are unable to seize the evidence on which the arrest depends, there is real danger that it will become unavailable to a prosecution before a trial of an adversary issue can be concluded. It is fatuous to assume that the evidence would not meanwhile be sold off or destroyed while an adversary contest was being waged or that the itinerant hucksters in these shops will meanwhile not have flown the coop. The declaratory judgment procedure demanded by plaintiff would be tantamount to suspension of obscenity law and would make a mockery of obscenity law and obedience to it. (301 F.Supp. at 549)

---

3. Several district courts outside the 4th and 7th Circuits have also adopted this rule. See Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968); Natali v. Municipal Court, 309 F.Supp. 192 (N.D.Cal. No. 50737, August 29, 1969).

4. Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 641 (4th Cir. 1969) (Citing Metzger v. Pearcy, 393 F.2d 202, 204 (7th Cir. 1968). At least one court has already noticed the self-incrimination problem inherent in such a procedure. See People v. De Renzy, 275 A.C.A. 419, 79 Cal. Rptr. 777 (1969) (citing Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886)).

5. Frankly, I do not understand this inconsistency in *Tyrone* where apparently only one print was seized. *Metzger* can perhaps be explained as a mass seizure case since four prints were originally seized.

I cannot agree with the *Rage Books* court in dispensing with all warrant requirements, but I do share its concern for society's right to enforce its legitimate obscenity laws.

Having eliminated a pre-seizure adversary hearing, several alternative possibilities remain. First, the magistrate could go to the theatre, view the film in question, and determine if it was obscene. This was the procedure followed in 208 Cinema v. Vergari, *supra*. I consider this an acceptable alternative, but I would not require it. In my judgment to require a judge to go into the community, probably at night, to view possible obscene films impinges too heavily on the dignity of the court. I cannot hold that the Constitution requires a judge to become a nocturnal movie critic in order for society to initiate prosecutions against obscene films.

 The remaining possibility is the investigator's affidavit such as was used in the instant case. The affidavit was seven single-spaced typewritten pages long. It meticulously described each scene in the film so that the judge could determine the film's obscenity for himself. It can, however, be forcefully argued that since the definition of legal obscenity is so elusive, it would be impossible for the judge to "focus searchingly on the question of obscenity"[6] without viewing the film. Of course, the closer the film comes to the borderline between obscene and not obscene, the more difficult becomes a determination from a "cold" affidavit. However, to reject the affidavit procedure throws me back to either voluntary submission of the film by the exhibitor or a judicial sojourn to the theatre.

To adequately safeguard first amendment rights and at the same time to provide a practical way for the People to initiate obscenity prosecutions, I propose the following procedure: A magistrate may issue a warrant to seize a film if an investigator who has seen the film presents an affidavit which describes it in detailed, non-conclusory language and if the magistrate determines from the affidavit that the film is probably obscene.[7] This determination should be arrived at with full regard for the infringement of first amendment rights which may result if the determination is incorrect. Then, to further insure against the suppression of non-obscene films and to test the affidavit, as soon as is practicable, the magistrate must, in the presence of the exhibitor and counsel, view the film and determine if it is constitutionally protected. I believe this procedure takes account of both competing interests and provides a constitutionally permissible compromise. It is the minimum consistent with my reading of the Supreme Court decisions by which I am bound.

The procedure I propose, in my judgment, offers the movie exhibitor greater protection than the one plaintiff advocates. Under the plaintiff's procedure the exhibitor may be required to defend his film (with all the concomitant trouble and expense) without any preliminary judicial determination whatever. Additionally, under the view taken by both circuit courts who have adopted plaintiff's position, he must also turn over one print of his film to the prosecutor without any prior judicial determination of its obscenity. Under the procedure I propose, an exhibitor would not have to defend or produce his film until after a judicial determination of its probable obscenity had been made. Any seizure would be immediately followed by a showing of the film to the magistrate who could then adequately rule on its

6. Lee Art Theatre v. Virginia, quoted *supra*.

7. There would also have to be a nexus between the film and some crime as required by Cal.Pen.Code § 1524. *See* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

constitutional status. Even if it was then found obscene, he would still lose only the one print with no restriction on further exhibition from another print until the matter came to trial.

It is therefore ordered that defendants' motion to dismiss be, and the same is, hereby denied.