The **PAPER BACK MART** and **Virgo Enterprises, Inc., a corporation,**
Plaintiffs,

v.

**CITY OF ANNISTON, ALABAMA,**
et al., Defendants.

Civ. A. No. 75–G–2075–E.

United States District Court,
N. D. Alabama, E. D.

Jan. 26, 1976.

Robert M. Shipman, John S. Somerset, Shipman & Somerset, Huntsville, Ala., for plaintiffs.

Richard B. Emerson, Emerson & Galbraith, Anniston, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

The complaint in this cause prays for declaratory and injunctive relief in regard to the ordinance of the City of Anniston, Alabama, Number 75–0–50, dated October 28, 1975, and effective November 3, 1975. The court has conducted a preliminary injunction hearing, and after due notice to the parties, ordered that

the trial of the action on the merits be advanced and consolidated with the hearing of the motion for preliminary injunction, in accordance with Rule 65(a)(2), Federal Rules of Civil Procedure.

The complaint challenges the constitutionality of the above-cited ordinance, making it a criminal act to sell or distribute any obscene matter. Plaintiff asks for a declaratory judgment that the ordinance is unconstitutional and to enjoin the enforcement of said ordinance.

The complaint presents, then, a simple question for the court's determination: Is this ordinance unconstitutional? The complaint alleges that the ordinance, as worded, is an unconstitutional prior restraint upon the first, fourth and fifth amendment rights of the petitioners in that the ordinance places the burden of determining what matter is obscene and what matter is not obscene upon petitioners. Plaintiffs further complain that the ordinance is void for vagueness, for "overbreath" (sic), and because the "statute sets forth standards at variance with and insufficient for those minimum standards prescribed by the United States Supreme Court in their rulings in First Amendment matters."

The United States Supreme Court in 1973 made its most significant contribution to the developing law concerning the first amendment status of obscene material. In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Court set out its most instructive definition of obscene material. Chief Justice Burger, joined by Justices White, Blackmun, Powell and Rehnquist, stated:

> [T]oday, for the first time since Roth . . . a majority of this Court has agreed on concrete guidelines to isolate "hard core" pornography from expression protected by the First Amendment. 413 U.S. at 29, 93 S.Ct. at 2617.

After noting the danger of regulating any form of expression, the Chief Justice wrote:

> [W]e now confine the permissible scope of such [obscenity] regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to words which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

> .    .    .    .    .

> We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

>> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

>> (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

> 413 U.S. at 24, 25, 93 S.Ct. at 2615.

The Court established basic guidelines for the trier of fact in determining whether any particular matter is obscene. The guidelines are as follows:

> .   .   .   (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interests, [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

> .    .    .    .    .

If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. . . .

413 U.S. at 24, 25, 93 S.Ct. at 2615.

The court in *Miller,* therefore, established a basic framework for the drafting of statutes or ordinances dealing with obscene materials. Section 3 of City of Anniston Ordinance Number 75–0–50 provides as follows:

It shall be unlawful for any person, with knowledge of its contents, in this City or the police jurisdiction thereof to prepare, sell, exhibit, or distribute or to give away or offer to give away, or to have in his possession with intent to sell, exhibit, distribute, give away, or offer to give away, any obscene matter.

The ordinance defines obscene in the following manner:

"Obscene" means (1) that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest in sex; (2) that the work depicts or describes, in a patently offensive way, sexual conduct hereby defined as (a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, or (b) patently offensive representations or descriptions of masturbation, excretory functions, or lewd exhibitions of the genitals; and (3) that the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

■ This court finds that the ordinance in question is in accordance with both the letter and the spirit of the guidelines set out in *Miller v. California, supra.* This court does not believe that petitioners' attack on the ordinance as unconstitutionally vague or overly broad can be sustained. The ordinance's defi-

nition of "obscene" encompasses those elements recognized by the Supreme Court as constitutional. The definition does not go beyond the *Miller* recommendations. As stated by the Court:

We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution. 413 U.S. at 27, 93 S.Ct. at 2616.

The ordinance in question gives the petitioners the same notice that a reading of *Miller* would provide. The ordinance does not threaten petitioners with any potential for criminal liability greater than a reading of *Miller* would indicate.

■ This court concludes that since the ordinance in question so closely follows the guidelines set out in *Miller v. California, supra,* there is no substance to allegations that the ordinance is vague or overly broad. Plaintiffs' contentions that the ordinance constitutes a prior restraint upon first amendment rights are equally unsustainable. The court finds the following language in the case of *Rage Books, Inc. v. Leary,* 301 F.Supp. 546 (S.D.N.Y.1969), instructive on plaintiffs' contentions that this ordinance constitutes prior restraint:

The Supreme Court has held that confiscatory seizure of substantial quantities of books or other matter is not permissible unless preceded by an adversary judicial determination of the obscenity of the material. *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). See, *United States v. Brown,* 274 F.Supp. 561 (S.D.N.Y.1967).

An arrest and an accompanying seizure of specimens only of the allegedly obscene materials are another matter entirely. No decision has thus far prohibited the normal police function of effecting an arrest and the seizure of sample evidence of a suspected crime being committed. Such an arrest and a limited supporting seizure are not tantamount to a prior restraint since the jeopardy faced is essentially the

restraint of obscenity law itself in respect of the remainder of the wares on the shelves and self-censorship in respect thereof at the option of the merchant. . . .

The plaintiff would require the police to proceed by a prior adversary judicial hearing on the question of its obscenity before a specimen of questioned matter could be seized as evidence. The plaintiff would eliminate the right of the police to arrest the purveyor of the material until after the adversary judicial hearing. This all seems to carry the protection of liberty of speech too far and adversely to the public interest to be protected. 301 F.Supp. at 548–9.

■ The Southern District of New York decision recognizes the basic constitutional policy behind "prior restraint." The first amendment rights of an individual to sell material cannot be abridged until the material has been judicially declared obscene. However, the Constitution does not prevent the states from criminally prosecuting persons upon a complaint of selling obscene material. It is axiomatic that the Constitution would prevent a state from censoring materials from the public without due process safeguards. "By contrast, if the State uses its penal system to punish expression outside permissible bounds, the State does not comprehensively review any form of expression; it merely considers after the event utterances it has reason to suppose may be prohibited. The breadth of its review of expression is therefore much narrower and the danger that protected expression will be repressed is less." A Quantity of Copies of Books v. Kansas, 378 U.S. 205 at 222, 223, 84 S.Ct. 1723 at 1732, 12 L.Ed.2d 809 at 819, 820 (1964). (Dissenting opinion, Harlan, J.) The guilt or innocence of the person charged will depend upon a determination that the material dispensed is obscene. This type statute or ordinance does not abridge any individual's right to sell any material; it merely holds him accountable if he does.

■ As was held in the case of Bazzel v. Gibbens, 306 F.Supp. 1057 (E.D.La. 1969), whether or not the statute or ordinance is an impermissible prior restraint depends upon the nature and purpose of it. If the seizure of the material is made for the purpose of destroying the thing seized and for the purpose of preventing the dissemination of the material involved, then a reading of A Quantity of Copies of Books v. Kansas, supra, teaches that an adversary hearing prior to the seizure and/or destruction of the material is required in order to meet the first amendment guarantees to the right of freedom of expression. But where, as here, the purpose of the statute or ordinance and the seizure of the material is for the sole purpose of getting evidence in a criminal action to punish the dissemination of unprotected material, then the nature and purpose of the ordinance and resulting seizure is not that brand of censorship traditionally recognized as "prior restraint." The significant feature of the type of criminal ordinance involved in this case is that it imposes no continuing restriction upon the dissemination of the obscene matter; every repeated offense involving the same book or a like book requires an independent adjudication of the obscenity of the matter in question.

Several courts have recognized that statutes or ordinances making it a criminal offense to distribute, sell, or otherwise dispense obscene material do not constitute constitutionally impermissible prior restraint. Greenmount Sales, Inc. v. Davila, 479 F.2d 591 (4th Cir. 1973); Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972); United States v. Young, 465 F.2d 1096 (9th Cir. 1972); Miller v. United States, 431 F.2d 655 (9th Cir. 1970); United States v. Wild 422 F.2d 34 (2nd Cir. 1969), cert. denied 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971); United States v. Gundlach, 345 F.Supp. 701 (M.D.Pa.1972); Bazzell v. Gibbens, 306 F.Supp. 1057 (E.D.La.1969); May v. Harper, 306 F.Supp. 1222 (N.D.Fla.1969); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd 397

U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); *Rage Books, Inc. v. Leary,* 301 F.Supp. 546 (S.D.N.Y.1969); *Schackman v. Arnebergh,* 258 F.Supp. 983 (C.D.Cal. 1966); *State v. Jackson,* 224 Or. 337, 356 P.2d 495 (1960). This court so holds.

The contrary view has won approval in several courts, *e. g., Delta Book Distributors, Inc. v. Cronvich,* 304 F.Supp. 662 (E.D.La.1969); *Cambist Films, Inc. v. State of Illinois,* 292 F.Supp. 185 (N.D.Ill. 1968); *Sokolic v. Ryan,* 304 F.Supp. 213 (S.D.Ga.1969). But the better reasoned decisions and the weight of authority are in accord with the holding in this case.

Plaintiffs in their briefs request this court to declare the ordinance unconstitutional both on its face and as applied. However, the pleadings do not raise the issue of the constitutionality of this ordinance with regard to its application. Therefore, it is unnecessary for the court to respond to this contention. However, if the issue were raised by the pleadings, the decision would be that the evidence shows no unconstitutional application of the ordinance to these plaintiffs.

Accordingly, judgment will be entered in favor of the defendants and against the plaintiffs this date.